Abraham J. Gellinoff, J.
Plaintiffs sue to have declared null and void the Rent Stabilization Law of the City of New York, hereinafter called Title YY (title YY of chapter 51 of the Administrative Code of the City of New York). During the pendency of this action they move to restrain the Mayor and the Administrator of the Housing and Development Administration of the City of New York (New York City Charter, § 1800 et seq.) from acting under or implementing Title YY.
The preamble to this new law states that it is a local law “ to amend the administrative code of the city of New York, in relation to stabilization of rents in certain housing accommodations presently exempt from residential rent control by voluntary self-regulation by industry
The law departs from the standard residential control system presently employed in which a government administration agency enforces the law. Title YY permits the owner of residential property not now controlled to place it either under standard rent control or under a real estate industry self-regulation organization which is permitted, within limits, to allow more and higher rent increases than under standard rent control.
Plaintiffs contend that Title YY provides for the administration of the regulation and control of rents by real estate industry stabilization associations, a rent guidelines board, and a conciliation and appeals board, and that it therefore violates the *250 State enabling act (L. 1962, ch. 21, as amd. [Local Emergency Housing Rent Control Act, § 1 et seq.]).
The State enabling act transferred rent control from the State to the city. In section 1 (subd. 2) of the Act, the State Legislature found that “ a serious public emergency continues to exist in the housing of a considerable number of persons that rent control is ‘ ‘ necessary and designed to protect the public health, safety and general welfare ’ ’; that * ‘ the transition from regulation to a normal market of free bargaining” was “ still the objective of state policy ” but “ must be administered with due regard for such emergency ’ ’; and that 1 ‘ the policy herein expressed should now be administered locally * * * by an agency of the city itself ”.
Section 1 (subd. 4) of the State enabling act prescribes how such ‘ ‘ agency of the city itself ’ ’ may be established. It provides that the Mayor shall “ establish or designate an official, bureau, board, commission or agency of such city * * * to administer the regulation and control of residential rents and evictions within such city ’ \ The subdivision announces that it will thereafter in the section refer to the words ‘1 official, bureau, board, commission or agency ” of the city as the “ city housing rent agency”. Accordingly, after thus directing the Mayor to establish or designate “ an official, bureau, board, commission or agency of such city ”, the subdivision adds: ‘ ‘ unless such city, acting through its local legislative body, shall have enacted * * * a local law or ordinance * * * prescribing a different method of establishing or designating a city housing rent agency ’ ’; meaning, unless the local legislative body shall have prescribed a different method of establishing or designating an “ official, bureau, board, commission or agency of such city”. The subdivision then states that “ in such case such agency ”■ — the official, bureau, board, commission or agency of such city — “ shall be established or designated in accordance with said local law or ordinance ”.
In subdivision 5 of section 1, the State enabling act then empowers the city “ acting through its local legislative body * * * to adopt and amend local laws or ordinances in respect of the establishment or designation of a city housing rent agency ”.
When the Act says in its “ Legislative finding ” (§ 1, subd. 2) that ‘‘ the policy herein expressed should now be administered locally * * * by an agency of the city itself ” (italics supplied), it means the policy must be administered by an agency responsible to the city, not to the State. The State enabling act grants the local legislature full power and discretion *251 to determine the form and composition of the instrumentality administering rent control, hut such instrumentality must be “ an official, bureau, board, commission or agency of such city ”, established or designated as such by the local legislature.
Acting under the authority of the enabling act, the City of New York passed the New York City Bent and Rehabilitation Law (Local Law No. 20 of 1962, title Y of chapter 51 of the Administrative Code of the City of New York). For convenience this law will hereinafter be referred to as Title Y. Title Y vested the administration and enforcement of its provisions in the City Rent and Rehabilitation Administration, which was designated as the city rent agency. In 1967, by Local Law No. 58 of 1967, the City designated the Housing and Development Administration as the city rent agency to administer and enforce Title Y. Title Y is the law which presently governs rent control of housing accommodations completed before February 1, 1947. Title Y is administered by the duly designated city rent agency, the Housing and Development Administration (title Y, ch. 51, Administrative Code, § Y51-3.0, subd. [b]).
With the foregoing as a background, Title YY — the law claimed to violate the State enabling act — may now be considered.
Title YY was passed by the New York City Council on April 24, 1969 (Local Laws, 1969, No. 16 of City of New York), receiving 35 affirmative votes and 1 negative vote. It was approved by the Mayor on May 6, 1969. It takes effect immediately and expires on April 1, 1974 ‘ ‘ unless rent control shall sooner terminate as provided in subdivision three of section one ’ ’ of the State enabling act.
Under Title YY, the City Council establishes a rent guidelines board whose members are all appointed for a fixed term by the Mayor. The rent guidelines board is empowered to “ establish a guideline for rent increases upon renewal leases or new tenancy to dwelling units covered by this law ”. In general, the maximum rental increases which Title YY permits the guideline to establish is not more than 10% for two-year leases and 15% for three-year leases over the rental charged on May 1, 1968. The rent guidelines board is empowered to prescribe other levels of fair increase under certain specified limitations, which “ shall be filed with the City Clerk and published in the City Record ’ ’.
Commencing July 1, 1970, and annually thereafter, the rent guidelines board is required to review the guidelines to determine if revisions are necessary after considering various fac *252 tors set forth in Title YY affecting the real estate market (§ YY51-5.0). The members of the rent guidelines board are to be compensated at a fixed rate per day. Who is to compensate them is not stated. They are, however, to “be provided staff assistance by the housing and development administration ” (§ YY51-5.0, subd. c) and “ All agencies of the city of New York shall make available to the rent guidelines board information requested by it for purposes consistent with its responsibilities under this law ” (§ YY51-5.0, subd. d, par. [3]).
Title YY also provides that a real estate industry stabilization association may be formed having as members no less than 40% of the dwelling units covered by the law. Such association ‘ ‘ may register with the housing and development administration under the terms and for the purposes herein provided by filing with such administration copies of its articles of incorporation or association, copies of its rules, and such other information as the administration may require within sixty days of the effective date of this law.”
To entitle it to registration with the Housing and Development Administration, the association must establish an appeals and conciliation board, the members of which are to be appointed for a fixed term by the Mayor with the approval of the Oity Council to act upon tenants’ complaints and requests for increases by landlords based on hardship (§ YY51-6.0, subd. b, par. [3]).
Also, before an association may be registered, it must “ adopt a code for stabilization of rents covering related terms and conditions of occupancy ’ ’, and the code must be approved by the Housing and Development Administration (§ YY51-6.0, subd. b, par. [2]).
The Housing and Development Administration is mandated not to accept for registration any association unless it appears that ‘ ‘ the association is of such character that it will be able to carry out the purposes of this law” and that its members are “ required to agree in writing to comply with the code and to abide by orders of the conciliation and appeals board ” (§ YY51-6.0, subd. b, pars. [4], [5]). Title YY specifically spells out in detail what the code must provide before the Housing and Development Administration may approve it.
For example, the code must ‘ ‘ provide for a cash refund or credit to be applied against future rent, in the amount of the excess, if any, of rent paid since ” January 1, 1969 over the permitted level of fair increases. It must specifically provide “ that if a member fails to comply with any level of fair rent increase established under this law or any order of the concilia *253 tion and appeals board or is found by the conciliation and appeals board to have harassed a tenant to obtain vacancy of his housing accommodation, he shall not be a member in good standing of the association ”.
It must also provide “ for the imposition of dues upon the association’s members solely for the purpose of defraying the reasonable expenses of administration and authorizing the equitable allocation of dues among the association’s members.” (§ YY51-6.0, subd. b, pars. [10], [12].)
Furthermore, the “ housing and development administration may, after notice and opportunity for hearing, suspend the registration of an association if it finds that the articles, code, rules or other conduct thereof do not conform to the requirements of this law and any such suspension shall remain in effect until such administration issues an order determining that such articles, rules, code or other conduct have been modified to conform with such requirements.” (§ YY51-6.0, subd. d.)
In addition, the Housing and Development Administration is given power under the law ‘ ‘ to promulgate such rules and regulations as it may deem necessary for the effective implementation of this law ” (§ YY 51-4.0, subd. c).
In the July 16, 1969 issue of the New York City Record, the Housing and Development Administration published a notice setting forth that “ The Beal Estate Industry Stabilization Association of New York City, Inc.” had filed with the Housing and Development Administration the papers and documents required by Title YY, together with a copy of the code, that the Association had been accepted for registration, and that its code, a copy of which was also published, had been approved. The Housing and Development Administration also published a copy of its proposed Bules and Begulations containing the following: ‘ ‘ Section 3. Failure of Owners to Join Association, Suspension and Expulsion. Within ten days after a determination by either a conciliation and appeals board or an association chat an owner is not a member in good standing, such board or association, as the case may be, shall transmit a copy of such determination to the administrator. Upon receipt of such a determination or upon a finding by the administrator that the owner of a dwelling unit subject to the rent stabilization law has not joined an association, the administrator shall cause the City rent agency, upon notice to the owner, to establish and register the lawful maximum rent for such dwelling unit pursuant to the provisions of Title Y of Chapter 51 of the Administrative Code based upon the rent charged therefor on May thirty-one, nineteen hundred sixty-eight. Thereafter, said dwelling unit shall *254 remain subject to the provisions of such Title Y until such time, if any, as the owner’s membership in good standing in the association with respect to said dwelling unit shall be reinstated in accordance with the terms and conditions of the determination ’
Title YY applies to certain class A multiple dwellings containing six or more dwelling units. In essence, it applies (with certain exceptions, not here relevant) to housing accommodations completed after February 1, 1947 and before March 10, 1969 (§ YY51-3.0, subd. a). It also applies (§ YY51-3.0, subd. b) to housing accommodations in multiple dwellings completed before February 1, 1947 which were decontrolled by the city rent agency pursuant to Title Y (§ Y51-12.0). Succinctly stated, Title YY applies to dwelling units that are not now rent-controlled— either because they have never been controlled or because although once controlled they have since been decontrolled.
What Title YY does is to place all dwelling units covered by the law under rent control subject to the provisions of Title Y — fixing the maximum rent on the basis of the rent charged on May 31, 1968, ‘1 unless the owner of such units is a member in good standing of any association registered with the housing and development administration pursuant to YY51-6.0 ”. (§ YY51-4.0; italics supplied.)
A “ member in good standing ” is defined as “an owner of a housing accommodation subject to this law who joined such an association within thirty days of its registration with the housing and development administration or within thirty days after becoming such owner, whichever is later, provided such accommodations were not under actual control of the city rent agency when he became the owner thereof, and further provided such owner complies with prescribed levels of fair rent increases established under this law, does not violate any order of the conciliation and appeals board and is not found by the conciliation and appeals board to have harassed a tenant to obtain vacancy of his housing accommodation.” (§ YY51-4.0, subd. a.)
In summary, then, what has happened by the enactment of Title YY is that all covered dwelling units not now controlled are placed under control of the existing city rent agency (the Housing and Development Administration), and that dwelling units whose owners regulate themselves according to certain specified standards decreed by the City Council in Title YY escape such regulation by the city rent agency.
Title YY never intended to designate the real estate industry stabilization association, or the rent guidelines board, or the *255 conciliation and appeals board, alone or in combination, as a city rent agency. Nor does it do so.
The rent guidelines board, created directly by the City Council, is a public body (see Kingston Assoc. v. La Guardia, 156 Misc. 116, 121 and cases cited; affd. 246 App. Div. 803). In some respects it may be considered a city agency (see Jewish Hosp. of Brooklyn v. “ John Doe ”, 252 App. Div. 581). However, its functions are limited to the establishment of guidelines for rent increases (§ YY51-5.0) and it does not “ administer the regulation and control ” (L. 1962, ch. 21, § 1, subd. 4) of rents.
The real estate industry stabilization association is a corporation organized under permission of the City Council (§ YY51-6.0). The conciliation and appeals board is established and administered by the corporation, notwithstanding that its members are appointed by the Mayor with the approval of the Council (§ YY51-6.0, subd. b; subd. c, pars. [10], [11], [12]). Whether or not these bodies may, in a limited sense and under certain conceivable circumstances, be deemed public bodies (see, e.g., County Comrs. v. Chandler, 96 U. S. 205, 208; Matter of Perry, 287 N. Y. 539; Matter of Davis, 31 A D 2d 594; Matter of Holt v. Jansen, 26 Misc 2d 247, affd. 283 App. Div. 796, mot. for lv. to app. den. 307 N. Y. 939; Chiropractic Assn. of N. Y. v. Hilleboe, 12 N Y 2d 109; Van Campen v. Olean Gen. Hosp., 210 App. Div. 204, affd. 239 N. Y. 615) is beside the point and need not now be determined. For, in any event, separately or in combination, they are not a city rent agency and Title YY has not designated them as such. While these bodies regulate and control rents, they do so voluntarily and at their own expense. They perform their functions not on behalf of the city but on behalf of the corporation’s members. The members themselves are responsible not to the city but to the corporation. It is the obligation of a member to remain ‘ ‘ a member in good standing ’ ’, and as soon as he loses such standing the dwelling units he owns come under control of the heretofore duly established and designated city rent agency.
Title YY does not create a new or different city rent agency. What it does is to classify certain housing accommodations — dwelling units owned by a member in good standing of a registered real estate industry stabilization association — ■ as not subject to control by the existing city rent agency. Such classification is within the full powers vested in the city by the State enabling act, which provides (L. 1962, ch. 21, § 1, subd. 5): ‘ ‘ When it deems such action to be desirable or necessitated by local conditions in order to carry out the purposes of this sec *256 tion, such city is hereby, authorized and empowered to adopt and amend local laws or ordinances * * * in respect of the regulation and control of residential rents, including but not limited to provision for the establishment and adjustment of maximum rents, the classification of housing accommodations, the regulation of evictions, and the enforcement of such local laws or ordinances.” (Italics supplied.)
The State enabling act does not tell the city how to classify the housing accommodations it wants to control. It does not tell the city what dwelling units it must control, or what units it need not control. The State enabling act specifically provides that the “ control of residential rents and evictions * * * shall be a matter for local determination within each such city ” (L. 1962, ch. 21, § 1, subd. 3). The State enabling act does not prohibit the city from refraining to control dwelling units which, in the city’s determination, it should not control.
If the city determines not to control certain units because the need to control them does not exist, since they are already self-controlled in a manner satisfactory to the city, the State enabling act does not compel the city to control them. More specifically, the State enabling act does not prohibit the city from excluding from control dwelling units already controlled by self-regulation provided the self regulatory standards are clearly defined and legal. Such exclusion is permissible, for “ the law may forbid certain acts when done by members of a specified class without forbidding such acts by others where the danger from such acts is characteristic of the class named ” (16 C. J. S., Constitutional Law, § 353).
In the determination of the City Council the danger of ‘ ‘ demanding exorbitant and unconscionable rent increases ’ ’ (Title YY, § 51-1.0) will not exist in any considerable degree as to dwelling units controlled by self-regulation under the specific standards and guidelines charted in Title YY by the City Council itself. Therefore, it was permissible for the City Council to place under presently existing control units that are not now controlled, allowing such units, however, to avoid such control as long as the owner remains a member in good standing of the association (Griffith v. Connecticut, 218 U. S. 563; Mutual Loan Co. v. Martell, 222 U. S. 225).
The conditions under which an owner may remain a “ member in good standing ” are categorically specified in Title YY; and, since under article 78 CPLR (see §§ 7802, 7803) the determinations of the association are subject to legal review, there can be no denial of “ due process of law ” (see Matter of Auer v. *257 Dressel, 306 N. Y. 427; Matter of Pino v. United Democratic Regular Org., 195 N. Y. S. 2d 860; Matter of Battipaglia v. Democratic Executive Comm., 20 Misc 2d 226; Matter of Colodney v. New York Coffee and Sugar Exch., 1 Misc 2d 643 [revd. on other grounds 1 A D 2d 999, affd. 2 N Y 2d 149]).
For the reasons above stated the court concludes that the optional self-regulatory scheme provided in Title YY does not violate the State enabling act.
Plaintiffs further contend that paragraph ( a) of subdivision 4 of section 10 of the Municipal Home Buie Law authorizes the City Council to delegate to ‘1 any officer or agency of such local government ” the power to “ promulgate rules ” for “ administering the provisions of any local law ”, and that there is no provision in the State enabling act authorizing the city to confer such power upon a private association corporation. They claim, therefore, that the adoption of rules and the code by the corporation constitutes an invalid delegation of legislative and administrative power.
These rules and the code, however, are binding only on the members of the association who choose to join it. They are not per se laws of the council or rules or regulations of “ any officer or agency ” of a local government. They do not have the force of law; and if they are not complied with the penalty is the possible loss of status as a “ member in good standing ”. The ensuing consequence, that the dwelling unit forfeits exclusion from control as provided in Title YY, results from noncompliance with the rules or code.
The rules and the code are not independently or voluntarily devised and authored by the association. They are essentially a restatement of the rules and code specified in Title YY. They epitomize the standards and conditions under which a dwelling unit is deemed by the City Council not to warrant control under Title Y. They also enunciate the standards and conditions which, if not complied with, place the dwelling unit under control of Title Y.
Compliance with the rules and regulations is never compulsory for any owner, whether a member of the association or not. Compliance is purely voluntary. The permission which Title YY grants to form an association and for the association to adopt a code and rules does not constitute a delegation of legislative or administrative power (cf. Matter of Fink v. Cole, 302 N. Y. 216) and therefore does not violate the Municipal Home Buie Law and is not in contravention of the State enabling act.
*258 Plaintiffs further state that the 11 conferring of authority * * * upon a private corporation to regulate a large segment of the real estate industry is an unconstitutional delegation of legislative power” inasmuch as article 3 (§ 1) of the New York State Constitution provides that “ The legislative power of this State shall be vested in the senate and assembly ”.
As has already been just shown, Title YY does not confer on the association authority to regulate. It grants permission to regulate, but to regulate its own members only. Any eligible owner is free to avail himself of such regulation, if he so pleases. The cited provision of the State Constitution is therefore not violated.
Plaintiffs next contend that the function of administering the city’s rent control law is a governmental function; that the history of rent control legislation, more particularly section 2 of the State enabling act, contemplates that the cost of administering ‘ ‘ the regulation and control ’ ’ of rents be borne by the State; that the requirement in Title YY that the association provide in its code for the payment of dues by its members is a special tax, upon one group of citizens to pay the cost of administering a local law; that article IX (§ 1, subd. [g]) of the State Constitution provides that a local government must be authorized by the State Legislature to enact laws apportioning the costs of its functions and services, and the levy and administration of this special tax in the form of dues to pay for the costs of administering the new law has not been authorized by the State Legislature as required by the Municipal Home Rule Law (§ 10, subd. 1, par. [ii], subpar. a, cl. [8]); that a local tax not authorized by the State Legislature is invalid ( citing Empire State Bldg. Corp. v. City of New York, 26 A D 2d 320 [1st Dept., 1966], affd. 23 N Y 2d 830); and that the State enabling act does not authorize the imposition of special dues or taxes upon real state owners to defray the expenses in respect of the regulation and control of residential rents within a city. They contend therefore that the requirement in the code, that the members pay dues, is illegal.
In the first place the payment of dues by the association’s members is not a tax (see, in this connection, People v. Brooklyn Garden Apts., 283 N. Y. 373, 380; cf. Matter of Tierney v. Cohen, 268 N. Y. 464; Fox v. Mohawk & H. R. Humane Soc., 165 N. Y. 517, 526). In the second place, neither the city nor the State imposes the dues. Title YY does not compel anyone to pay it, member or nonmember. Title YY merely permits the member to pay it if he wishes to remain a member. Lastly, the dues are not paid “ in respect of the regulation and control *259 of residential rents * * * pursuant to ” the State enabling act (L. 1962, ch. 21, §2 ). They are paid to defray the member’s individual and personal expense in establishing, for his own benefit, that his dwelling unit should escape regulation and control by the city rent agency designated by Title YY to control his unit in accordance with the State enabling act. The dues are paid ££ solely for the purpose of defraying the reasonable expenses ’ ’ of administration of the association (§ YY51-6.0, subd. c, par. [12]). Part I (§ 9) of the code provides the following: “ Section 9. The dues of the Industry Association shall be imposed solely for the purpose and in an amount sufficient to defray the reasonable expenses of organizing and administering the affairs of the Association, the CAB, and for such other purposes as may be specified by the Board of Directors of the Industry Association. The dues payable by each member shall be his pro rata share of the foregoing expenses, based upon the number of dwelling units subject to this code and as fixed by the Board of Directors. ” (N. Y. L. J., front pages of July 16 and 17, 1969.)
The requirement in Title YY that the association impose dues on its members does not violate the Municipal Home Rule Law, the State enabling act, or any statute or provision of the State Constitution.
Plaintiffs also contend that the requirement in Title YY that the code £ £ provide for a cash refund or a credit, to be applied against future rent, in the amount of the excess, if any, of rent paid since January first, nineteen hundred sixty-nine over the permitted level of fair rent increases ” (§ YY51-6.0, subd. c, par. [3]), is illegal. The actual code provision, as approved by the Housing and Development Administration, is as follows (Part I, § 10, subds. [b], [c]):
££ (b) Duty to Refund. Each member of the Industry Association shall credit eligible tenant by cash refund or credit against future rent in the amount of the excess, if any, paid since January 1, 1969, over the rents established by the RSL or this code. In the event such refund is provided by future credit, the amount of monthly credit shall not be less than the amount obtained by dividing the total refund by the number of months remaining under the lease and starting such payment or credit no later than July 1, 1969.
££ (c) An eligible tenant entitled to a refund or credit shall be a tenant in occupancy on or after January 1, 1969 ”.
Plaintiffs argue that ££ the State Enabling Act contains no provision permitting the local government to retroactively require landlords to return monies to tenants which were legally *260 collected, and that the lack of such express authorization makes this refund provision of the new rent law invalid.” They add that the State enabling law ‘‘ does not expressly confer ’ ’ such authority and it therefore “ cannot be construed by implication to give the City of New York the right to retroactively take money from landlords and give it to tenants ” (citing New York & Oswego Midland R. R. Co. v. Van Horn, 57 N. Y. 473, 477-78). They also state (quoting from said 57 N. Y. 473, 477-78), that no act of a Legislature can ever “ take the private property of one individual, without his consent, and give it to another ” and therefore “ Such an act comes in direct conflict with the constitutional provision that ‘ no person shall be deprived of life, liberty or property without due process of law.’ ”
The short answer to these contentions is that it is not the city, nor the State enabling act, nor Title YY, which obligates the landlord to return moneys to tenants; it is the landlord’s own association, which he has voluntarily joined, that compels him to do so. If he chooses not to join the association he does not have to agree to make the refund.
Recognizing that membership in the association is not obligatory, plaintiffs argue that they are coerced into joining the association which requires them to make such refund, since otherwise their noncontrolled housing accommodations will be made subject to Title Y; and they reason that if the City Council “ could not directly require landlords to give such refunds or credits, then they cannot accomplish the same result by establishing an illegal [italics supplied] pre-condition to membership, having the same effect ’ ’, citing the Court of Appeals ruling in Doubleday, Doran & Co. v. R. H. Macy & Co. (269 N. Y. 272, 281) that “ What the Legislature cannot do directly it cannot do indirectly ’ ’.
Accordingly, plaintiffs contend that the pre-condition to membership, i.e., their compelled agreement to refund to the tenants, is illegal. “ One cannot”, they say, “be forced to forego a constitutional claim by having an alternative choice of sacrificing an economic benefit ” (citing Louisiana v. NAACP, 366 U. S. 293 [membership association cannot be barred from doing business in a State if alternative choice required it to file affidavits which were violation of due process], and Elfbrandt v. Russell, 384 U. S. 11, [teacher could not be discharged if alternative choice required him to take an unconstitutional oath requirement]); and they rely on a decision by a three-Judge court on August 18, 1969 in James v. Goldberg (U. S. Dist. Ct., S.D.N.Y., 69 Civ. 2448).
*261 One of the arguments made by the city in that case was that it could condition the benefits of Aid to Families with Dependent Children upon requiring the recipient to permit the caseworker to enter her home, since the AFDC grants are a privilege or governmental gratuity. The court, in rejecting this argument, stated on page 22 of its decision: “ Accordingly, we find that the City and State may not condition the initial and continuing receipt of AFDC benefits upon a waiver of rights embodied in the Fourth Amendment. A contrary holding would threaten to ‘ produce a result which the State could not command directly.’ Speiser v. Randall [357 U. S. 513, 526].”
But in the case at bar the compulsory condition that the landlord agree to make refund does not deprive him of his right not to agree to make the refund.
The landlord’s agreement to make refund does not apply to just any tenant; it does not apply to a tenant from whom he has collected rent and who has since vacated. It only applies, as the code specifies, to a tenant who has paid excess rent since January 1, 1969 and is “ in occupancy on or after January 1, 1969 ”. The refunds are thus directly geared to the increased rent paid by a tenant in occupancy on or after January 1, 1969.
To allow a landlord to collect from a tenant an increased rent in exchange for refund of rent in excess of permissive rent theretofore collected from the same tenant, as a condition for escaping statutory control which would otherwise be imposed, does not constitute taking the landlord’s property without due process of law. It is due process of law.
The court finds that the provision in the code which requires the member of the association to agree to make refund, does not compel the member to waive any constitutional right.
In addition to owning dwelling units to which Title YY applies, plaintiffs own units completed before February 1,1947, to which Title YY does not apply; these latter units are controlled by Title Y.
The conditions of rent control under Title Y concededly are more onerous than units that escape such control through self-regulation under Title YY. Plaintiffs complain that, as to their units controlled by Title Y, the classification made by Title YY is arbitrary and discriminatory, thus denying them the equal protection of the laws in violation of the Fourteenth Amendment to the Federal Constitution and section 11 of article I of the New York State Constitution.
Title YY (§ 51-3.0) says: ‘ ‘ This law shall apply to Class A multiple dwellings * * * which: a. were completed after February first, nineteen hundred forty-seven, except dwelling *262 units # * * located in a building for which a certificate of occupancy is obtained after March tenth, nineteen hundred sixty-nine
Plaintiffs complain that since the certificate of occupancy for their units also was not obtained after March 10, 1969-it was obtained before February 1, 1947-the exclusion of their “ pre-February 1947 ” units from eligibility to optional self-regulation through the association membership provided in Title YY, is discriminatory and constitutes an illegal classification by the City Council. They complain that the Council had no right to limit such option to owners of units completed between February 1, 1947 and March 10, 1969 ; that the Council should have made the law applicable to plaintiffs’ units built before February 1, 1947; and that “ No reason whatsoever is given in the new law for the more favorable treatment accorded one segment of this same economic group. ’ ’
In effect what plaintiffs are attempting to do is to dictate to the City Council the composition of the class for which it should legislate in enacting Title YY. The class, they urge, should be ‘ ‘ Class A Multiple dwellings completed on or prior to March 10, 1969 ”. If that were the class, they say, their “ pre-February 1, 1947 ’ ’ units would also qualify, under Title YY, for escape from Title Y.
The law on the subject is clear.
In Mutual Loan Co. v. Martell (222 U. S. 225, 235) the United States Supreme Court said: “We have declared so often the wide range of discretion which the legislature possesses in classifying the objects of its legislation that we may be excused from a citation of the cases. We shall only repeat that the classification need not be scientific nor logically appropriate, and if not palpably arbitrary and is uniform within the class, it is within such discretion. ’ ’
In Metropolitan Cas. Ins. Co. v. Brownell (294 U. S. 580, 584) the court said: ‘ ‘ the courts may not declare a legislative discrimination invalid unless, viewed in the light of facts made known or generally assumed, it is of such a character as to preclude the assumption that the classification rests upon some rational basis within the knowledge and experience of the legislators. A statutory discrimination will not be set aside as a denial of. equal protection of the laws if any state of facts reasonably may be conceived to justify it.”
The classification “ must rest upon some ground of difference having fair and substantial relation to the object of the legislation ” (Allied Stores of Ohio v. Bowers, 358 U. S. 522, 527). *263 “ If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law ” (ibid). “ That a statute may discriminate in favor of a certain class does not render it arbitrary if the discrimination is founded upon a reasonable distinction, or difference in state policy ” (ibid., p. 528).
In the light of the law thus settled, plaintiffs’ attack on the classification made by the City Council is without merit.
The evidence before this court overwhelmingly establishes that rent conditions of uncontrolled apartments had created an emergency justifying the placing under control of dwelling units not then under control. Indeed, plaintiffs on this motion “ do not challenge the right of the city to have enacted a rent control law to prevent alleged exorbitant rent increases ”.
Paraphrasing the language of Mr. Justice Whittaker delivering the opinion of the Supreme Court in Allied Stores of Ohio v. Bowers (supra, pp. 528-529), this court cannot assume that the City Council’s enactment of Title YY was adopted arbitrarily or without good reason to further some legitimate policy of the city. What were the special reasons, motives or policies of the City Council for not extending to ‘ ‘ pre-1947 ’ ’ dwelling units the benefits of membership in a real estate industry association, this court does not lmow with certainty; nor is it important that it should (Southwestern Oil Co. v. Texas, 217 U. S. 114, 126), for a Legislature need not declare its purpose (Allied Stores of Ohio v. Bowers, supra, p. 528).
It is obvious from the evidence before the court that it may reasonably have been the purpose and policy of the City Council to further 1 ‘ the transition from regulation to a normal market of free bargaining between landlord and tenant ’ ’ but with ‘ ‘ due regard for ’’the over-all “ emergency ” (see findings and declaration of emergency stated in Title YY, § 51-1.0), avoiding, at the same time, possible chaos which might result from now weakening controls over “ pre-1947 ” units presently governed by Title Y. Other similar purposes may reasonably be conceived.
Therefore, this court cannot say that establishing as the class to which Title YY should apply, only dwelling units that were not then under control (whether completed after February 1, 1947 or completed before February 1, 1947 but since then decontrolled) was not founded upon a reasonable distinction, or difference in city policy, or that no state of facts reasonably can be conceived to sustain it. For those reasons it cannot be said, in the light of the settled law as shown by the cases cited, that *264 the questioned classification is invidious or palpably arbitrary and denies plaintiffs the equal protection of the laws within the meaning of the Fourteenth Amendment.
The city did not have to place dwelling units which it deems are now satisfactorily controlled under Title Y in the same class as dwelling units that are not now controlled at all (Griffith v. Connecticut, 218 U. S. 563; Mutual Loan Co. v. Martell, 222 U. S. 225). The State enabling act specifically states that the “ control of residential rents and evictions ” within the city “ shall be a matter for local determination within each ” city (L. 1962, ch. 21, § 1, subd. 3); see, also, in this connection, Gauthier v. Gabel, 44 Misc 2d 887, affd. 16 N Y 2d 720).
Classification is primarily for the Legislature, which has a wide discretion in respect thereof. There may be a class within a class. A statute enacted within the police power may not be adjudged invalid merely because omitted cases might have been properly included in the statute, ‘ ‘ for police legislation may rest on narrow distinctions ” (People v. Charles Schweinler Press, 214 N. Y. 395). Legislative power, not policy, is the concern of the courts.
Plaintiffs ’ counsel urge in their briefs that11 it is appropriate and incumbent upon the Court to decide the validity and constitutionality of the law upon this motion for a temporary injunction.” Accordingly, this court hereby decides that Title YY is valid and constitutional and that the motion for a preliminary injunction must therefore be denied.
Were this a motion to dismiss the complaint (see CPLR 3211), and if plaintiffs’ opposition were to consist of what they have already presented, this court would dismiss the complaint.
Although the court has found plaintiffs’ arguments to be without merit, the court commends their erudite counsel for the help their painstakingly careful and competent briefs have afforded the court.
The undersigned Justice reserves jurisdiction in this case to consider any motion defendants may make for summary judgment dismissing the complaint. Motion for injunction denied.