*1004 OPINION OF THE COURT
David B. Saxe, J.
The issue raised in these proceedings is of fundamental importance to the administration of the so-called "hardship” provisions of the Rent Stabilization Law in New York City. The Rent Stabilization Law (Administrative Code of City of New York § YY51-1.0 et seq., renum § 26-501 et seq.) has historically incorporated "hardship” provisions in recognition of the fact that an owner may not be able to earn the return on its capital investment that is prescribed by statute. If successful, an applicant for a "hardship” increase is issued an order by the Rent Guidelines Board. In 1983, "hardship” rental increases under an alternative hardship formula were made available to owners who were not able to maintain an annual gross rental income for the building which exceeded the annual operating expenses by a sum equal to at least 5% of the gross rents. (L 1983, ch 403, §§ 9, 49, adding Administrative Code § YY51-6.0 [c] [6-a], renum § 26-511 [c] [6-a].)
In these two CPLR article 78 proceedings, the court is asked to determine whether alternative hardship applications can be applied for by owners of unsold rent-stabilized apartments in cooperative and condominium buildings. In Matter of Cier Indus. v New York State Div. of Hous. & Community Renewal (DHCR) (index No. 23856/86), the owner of various units in a building located at 80 Park Avenue which was converted to condominium ownership had applied for but was denied consideration for any alternative hardship relief. Similarly, in Matter of Sharp & Lufkin v New York State Div. of Hous. & Community Renewal (index No. 23857/86), the owner of unsold shares in a cooperative building located at 203/205 East 72nd Street had applied for but was denied consideration of their alternative hardship application. The DHCR concluded that the statute offers this relief only to owners of buildings. The logic of the DHCR in support of this limitation was that the economic position of owners of rent-stabilized apartments in condominium and cooperative buildings is not reflective of the building’s total income and expenses. Thus, the DHCR claimed that the hardship which the statute contemplates should not be measured on an ad hoc unit-by-unit basis.
The Commissioner’s August 28, 1986 order with respect to Cier Indus, stated in pertinent part as follows: "The petitioner does not take into account income realized from apartment sales, does not credit itself with maintenance from the sold *1005 apartments, and does not impute a rent for those apartments as owner occupied. The statutory limitation of owners of buildings was included in recognition of the grave potential for abuse if this formula were available to those who, by virtue of a limited interest in a property, would claim a 'hardship’ among remaining units and seek additional rent increases. This section was enacted to give relief to owners of buildings who experience economic hardship. The Commissioner notes that sponsors of condominium plans, who normally profit from these conversions, are clearly not within the purview of the statute as intended beneficiaries of the alternative hardship procedures.”
The Commissioner’s order with regard to the Sharp & Lufkin application stated essentially the same reasons for denying the application.
However, petitioners contend that the statutory provision was misconstrued by the DHCR; the law is not nor should it be limited to owners of buildings. Rather, petitioners contend that if read in the context of the entire sentence the words "owners of buildings” means something else. The statute reads, in part as follows: "owners of buildings acquired by the same owner or a related entity owned by the same principals three years prior to the date of application” (see, L 1983, ch 403, § 49). Thus, petitioners claim that alternative hardship applications are limited to buildings which have been owned by the same entity for three years prior to the date of the application. The intent of the Legislature, claim the petitioners, was not to limit hardship applications to only "owners of buildings” but to those who own buildings for at least three years prior to the application for the hardship increase. Therefore, petitioners assert that the decision to exclude cooperative and condominium owners from obtaining rent increases from their respective tenants was arbitrary and capricious.
Instead, petitioners point to the meaning which the Code of the Rent Stabilization Association of New York City, Inc. ascribes to the word "owner”. Section 2 (h) includes all of the following: "An owner, lessor, sublessor, sponsor of a condominium or cooperative, assignee, or other person receiving or entitled to receive rent for the use and occupancy of any dwelling unit, or an agent of any of the foregoing.”
Under this broad definition, owners of units in both cooperative and condominium buildings would be permitted to apply for hardship increases.
*1006 It is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld (Matter of Johnson v Joy, 48 NY2d 689 [1979]; Matter of Howard v Wyman, 28 NY2d 434, 438).
Notwithstanding petitioners’ arguments to the contrary the plain meaning of Administrative Code § YY51-6.0 (c) (6-a) appears to expressly exclude those persons or entities which are not owners of the building (also see, Matter of Grand Leasing Co. v New York State Div. of Hous. & Community Renewal, 134 Misc 2d 133 [Sup Ct, Queens County 1986]).
Here, the reasons given by the agency for its decision to limit alternative hardship applications to building owners is rational and consistent with the original purpose for enacting the law. In 1986, a report was issued entitled "The Report of the New York State Temporary Commission on Rental Housing”, which contained recommendations to assist owners with rent levels which were not sufficient to enable owners to pay the operating expenses of the building.
Based largely on this report, the alternative hardship application law was enacted. The underpinning of the law recognized that rent regulation often limits the profit owners might otherwise make in a free market. Since the free rental market is manipulated by rent regulations, economic hardship may often befall building owners. Therefore, a measure of economic relief is given to these owners. However, to qualify, the building owner’s entire economic circumstance must be considered.
In fact, as respondent notes, the economic picture presented in both applications is not reflective of petitioners’ total economic situation. The CPA statements appended to the Sharp & Lufkin application expressly cautioned that the schedule of operating expenses was not prepared according to the generally accepted auditing and accounting principles and excluded depreciation, maintenance charges, and income and expenses resulting from the sale of cooperative units. Petitioner Sharp, who was the sponsor of the cooperative conversion, did not detail the money he made from the sale of the building to the cooperative, the initial maintenance charges, the sale price of cooperative leases, the terms of rental to himself of the commercial space, the initial management charges paid to his own management corporation — all of which have a bearing on the creation of his own hardship. Petitioners did not dispute *1007 these facts but merely asserted that profit was irrelevant. However? it was clear to the DHCR that the economic position which petitioners presented was that of the sponsor whose cash flow might be reduced as sponsor-held shares representing units were sold.
Although an applicant’s profit from other sources may not be relevant to obtaining a hardship increase, common sense dictates that the profit made on the same building is relevant. For petitioners to dispute this would distort the purpose for which these hardship applications are given and yield a nonsensical result.
I hold that only owners of buildings are, under the statute, entitled to apply for alternative hardship relief. Neither of these petitioners fall into that category; they do not even claim to be building owners. In the application of Cier Indus. the petitioner does not assert that it is anything other than the owner of units under the Condominium Act (Real Property Law § 339-e [14], [16]). And, in the application of Sharp & Lufkin, petitioners are cooperative shareholders; the entity which owns the building is the corporation. The two are distinct entities under the law (see, Susskind v 1136 Tenants Corp., 43 Misc 2d 588).
Therefore, these petitioners do not fall into the category of owners which the hardship laws were designed to assist. The administrative agency which is entrusted by the Legislature to interpret the rent laws must assure that the provisions of the statute are not evaded (see, People ex rel. McGoldrick v Sterling, 283 App Div 88). Limiting the hardship increased to building owners is a reasonable exercise of its authority. Accordingly, I find that there is a rational basis for the respondent’s determination.
Petitioners also advance constitutional "taking” and due process arguments to the effect that denying rent increases is a deprivation of a constitutionally mandated rate of return on their property. Petitioners claim that they are losing money on these buildings and that they should not be forced to operate a building at a loss. Being forced to do so makes the law confiscatory and unconstitutional as applied to them.
There is of course a long-established presumption of constitutionality that attaches to legislative enactments (United States v Kiffer, 477 F2d 349, 352 [1973]). Rent regulations have been repeatedly but unsuccessfully challenged as confiscatory even before the passage of hardship allowances. (8200 Realty *1008 Corp. v Lindsay, 60 Misc 2d 248 [1969], revd 34 AD2d 79 [1st Dept 1970], revd 27 NY2d 124, appeal dismissed 400 US 962 [1970].)
The claim here is that petitioners have a negative cash flow situation with regard to these individual units. Yet, as stated above, even their own accountants concede that their findings were not in accordance with certain accepted accounting standards and that, in fact, some important areas of actual income were not included in those figures. So, the court is not persuaded that petitioners’ "loss” is truly reflective of their economic picture as a whole. And, moreover, there is support for the proposition that operating at an economic loss is not necessarily per se unconstitutional in the field of rent regulation. (See, Teeval Co. v Stern, 301 NY 346 [1950]; Bowles v Willingham, 321 US 503 [1944].) Thus, although courts have been responsive to onerous and unreasonable rent and housing regulatory schemes (see, Seawall Assocs. v City of New York, 134 Misc 2d 187 [Sup Ct, NY County 1986]) for the most part the application of rent regulations have withstood due process, confiscatory challenges. (I. L. F. Y. Co. v City Rent & Rehabilitation Admin., 11 NY2d 480 [1962]; Plaza Mgt. Co. v City Rent Agency, 31 AD2d 347 [1st Dept 1969], affd 25 NY2d 630 [1969]; Bucho Holding Co. v Temporary State Hous. Rent Commn., 11 NY2d 469 [1962].) Simply put, the Constitution does not require that a rent-control statute insure that every landlord achieve a desired return. And, given the presumption that a legislative enactment in furtherance of police power is constitutional, the arguments advanced by petitioners are unpersuasive.
Petitioners’ final argument is addressed to the District Rent Administrator’s determination dismissing both of petitioners’ earlier applications because they used the wrong test year. The DHCR refused to address initial applications which contained income and expense figures for the 1983 calendar year. It appears that the statute became effective immediately upon its passage which was July 1, 1983 and provided that applicants for hardship increases must submit figures for a period of 12 months. So, these applicants used a 12-month period which included months prior to July 1, 1983. However, the DHCR Administrator concluded that it did not have the authority to consider data for a period of time prior to the enactment of the statute. Petitioners claim that the DHCR’s refusal to consider the data prior to July 1, 1983 postponed the effective date of the statute to July 1, 1984.
*1009 It appears however that this August 1986 order now under review dismissed as moot the portion of the application seeking denial of the petitioners’ initial 1983 applications. In view of the decision not to permit petitioners to file hardship applications the issue regarding which years should have been considered was therefore deemed moot by the respondent. And, in view of this court’s determination, that issue is once again moot.
Accordingly, petitioners Cier Industries and Sharp and Lufkin are denied their requested relief and the petitions are dismissed.