## MUTUAL LOAN COMPANY *v.* MARTELL.

ERROR TO THE SUPERIOR COURT OF THE STATE OF MASSACHUSETTS.

No. 29.  Submitted October 27, 1911.—Decided December 11, 1911.

The validity of police regulations depends upon the circumstances of each case, whether arbitrary or reasonable and whether really designed to accomplish a legitimate public purpose. *Chicago, Burlington & Quincy Ry. Co.* v. *Drainage Commissioners,* 200 U. S. 591.

The power of the State extends to so dealing with conditions existing in the State as to bring out of them the greatest welfare of its people. *Bacon* v. *Walker,* 204 U. S. 311.

Police power is but another name for the power of government; it is subject only to constitutional limitations which allow a comprehensive range of judgment, and it is the province of the State to adopt by its legislature such policy as it deems best.

Legislation cannot be judged by theoretical standards but must be tested by the concrete conditions inducing it.

A State may, as a police regulation, make assignments of future wages invalid except under conditions that will properly restrict extravagance and improvidence of wage-earners.

A State may, under conditions justifying it, prescribe that an assignment by a married man of wages to be earned by him in future shall be invalid unless consented to by his wife.

This court recognizes the propriety of deferring to tribunals on the spot and will not oppose its notions of necessity to legislation adopted to accomplish a legitimate public purpose. *Laurel Hill Cemetery* v. *San Francisco,* 216 U. S. 358.

A State has power to prescribe the form and manner of execution and

VOL. CCXXII—15

authentication of legal instruments in regard to property, its devolution and transfer. *Arnett* v. *Reade*, 220 U. S. 311.

There are many legal restrictions that may be placed by a State on the liberty of contract, and this court will not interfere except in a clear case of abuse of power. *Chicago, Burlington & Quincy R. R.* v. *McGuire*, 219 U. S. 549.

The legislature of a State has a wide range of discretion in classifying objects of legislation; and even if the classification be not scientifically nor logically appropriate, if it is not palpably arbitrary and is uniform within the class, it does not deny equal protection.

Legislation may recognize degrees of evil without denying equal protection of the laws.

The statute of Massachusetts making invalid assignments for security for debts of less than $200 of wages to be earned unless accepted in writing by the employer, consented to by the wife of the assignor, and filed in a public office, is not unconstitutional as depriving the borrower or the lender of his property without due process of law, nor is it unconstitutional, as denying equal protection of the law, because certain classes of financial institutions are exempted from its provisions. It is a legitimate exercise of the police power and there is a basis for the classification.

200 Massachusetts, 482, affirmed.

THE facts, which involve the validity under the Fourteenth Amendment of a statute of Massachusetts in regard to assignments of wages as security for loans, are stated in the opinion.

*Mr. Lee M. Friedman* for plaintiff in error:

Plaintiff does not deny the right in the legislature to pass a law fixing the rate of interest that may be taken on a loan of a sum of money of less than two hundred dollars; nor the right to reasonably regulate such business, so long as the statutes for that purpose do not violate constitutional privileges and guaranties; but does contend that Ch. 605 of the acts of 1908, Massachusetts, is in violation of such privileges and guaranties.

In order that a statute may be sustained as an exercise of the police power, the courts must be able to see that the enactment has for its object the prevention of some offense

or manifest evil, or the preservation of the public health, safety, morals, or general welfare, and that there is some clear, real and substantial connection between the assumed purpose of the enactment and the actual provisions thereof, and that the latter do in some plain, appreciable, and appropriate manner tend towards the accomplishment of the object for which the power is exercised. 22 Am. & Eng. Ency., 2d ed., 938; *Austin* v. *Murray*, 16 Pick. (Mass.) 126; *Greensboro* v. *Ehrenreich*, 80 Alabama, 579; *Noel* v. *People*, 187 Illinois, 587; *Chaddock* v. *Day*, 75 Michigan, 527; *State* v. *Ashbrook*, 154 Missouri, 375; *Smiley* v. *McDonald*, 42 Nebraska, 5; *People* v. *Gilson*, 109 N. Y. 389; *Mugler* v. *Kansas*, 123 U. S. 661; *In re Willshire*, 103 Fed. Rep. 620; *Lawton* v. *Steele*, 152 U. S. 133; *In re Marshall*, 102 Fed. Rep. 323.

The police power cannot be used as a cloak for the invasion of personal rights or private property; neither can it be exercised for private purposes or for the exclusive benefit of particular individuals or classes. *Ritchie* v. *People*, 155 Illinois, 98; *State* v. *Schlenker*, 112 Iowa, 642; *Matter of Jacobs*, 98 N. Y. 98; *Lien* v. *Norman County Com'rs*, 80 Minnesota, 58; *Deems* v. *Baltimore*, 80 Maryland, 164; *State* v. *Chicago &c. R. Co.*, 68 Minnesota, 381.

Occupations may be classified for license, provided always the classification is reasonable; but unreasonable classification which is not based on any real distinction between the different classes will render a statute void. 21 Ency. of Law, 2d ed., 804; *State* v. *Garbroski*, 111 Iowa, 496; *State* v. *Ashbrook*, 154 Missouri, 375; *Yick Wo* v. *Hopkins*, 118 U. S. 369; *Templar* v. *State Board of Examiners*, 131 Michigan, 256; *State* v. *Dering*, 84 Wisconsin. 585.

The State may not single out a class of citizens and subject it to oppressive discrimination. *Nashville &c. R. Co.* v. *Taylor*, 86 Fed. Rep., 185; *Tinsley* v. *Anderson*, 171 U. S. 106; *Minneapolis Ry. Co.* v. *Beckwith*, 129

U. S. 29; *Watson* v. *Nevin*, 128 U. S. 582; *Ohio* v. *Dollison*, 194 U. S. 447.

Even if this law were fair on its face and impartial in appearance (which it clearly is not), yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances material to their rights, the denial of equal justice is still within the prohibition of the Constitution. *Yick Wo* v. *Hopkins*, 118 U. S. 356; *Henderson* v. *Mayor of N. Y.*, 92 U. S. 259; *Chy Sung* v. *Freeman*, 92 U. S. 275; *Ex parte Virginia*, 100 U. S. 339; *Neal* v. *Delaware*, 103 U. S. 370; *Soon Hing* v. *Crowley*, 113 U. S. 703.

By "equal protection of the laws" is meant "equal security under them to every one under similar terms, in his life, his liberty, his property and in the pursuit of happiness." It not only implies the right of each to resort on the same terms with others to the courts for the security of his person and property, the prevention and redress of wrongs, and the enforcement of contracts, but also his exemption from any greater burdens and charges than such as are equally imposed upon all others under like circumstances. *Clark* v. *Kansas City*, 176 U. S. 114; *Lowe* v. *Kansas*, 163 U. S. 81; *State* v. *Ashbrook*, 154 Missouri, 375.

Equality of rights, privileges, and capacities should and must unquestionably be the aim of the law. *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *Magoun* v. *Illinois Trust & S. B. Co.*, 170 U. S. 283.

The classification is an improper one of the persons legislated against; making the rate of interest that may be charged on a loan of money of less than two hundred dollars depend upon the kind and nature of the security taken is an unconstitutional enactment. *Nichols* v. *Walter*, 37 Minnesota, 262; *Johnson* v. *Ry. Co.*, 43 Minnesota, 222; *Ex parte Sohncke*, 148 California, 262.

An assignment of future earnings which may accrue under an existing employment is a valid contract and creates rights which may be enforced both at law and in equity, and to limit them deprives the owner of his property without due process of law. *Tripp* v. *Brownwell,* 12 Cush. (Mass.) 376; *Citizens' Loan Association* v. *B. & M. R. R.,* 196 Massachusetts, 528. And see as to the extent of the liberty guaranteed: *Allgeyer* v. *Louisiana,* 165 U. S. 589; *Commonwealth* v. *Perry,* 155 Massachusetts, 117; *Bárbier* v. *Connolly,* 113 U. S. 27.

Section 7 of Ch. 605 is an unlawful interference with the liberty of both employé and the person loaning him money. *Lochner* v. *New York,* 198 U. S. 53; *Allgeyer* v. *Louisiana,* 165 U. S. 578; *Powell* v. *Pennsylvania,* 127 U. S. 678, 684.

If their rights can be limited by the legislature, it must be by virtue of the police power reserved to it. As to definition of the term "police power" and the limitations to which it is subject, see *Commonwealth* v. *Alger,* 7 Cush. 53, 84; *State* v. *Ashbrook,* 154 Missouri, 375; *In re Sohncke,* 148 California, 262; *Commonwealth* v. *Perry,* 155 Massachusetts, 117; *Lochner* v. *New York,* 198 U. S. 53; *Kuhn* v. *Detroit,* 70 Michigan, 534; *State* v. *Redmon,* 114 N. W. Rep. 137; *People* v. *Sieele,* 231 Illinois, 341; *People* v. *Marcus,* 185 N. Y. 257; *Bessette* v. *People,* 193 Illinois, 334; *Powell* v. *Pennsylvania,* 127 U. S. 678; *Allgeyer* v. *Louisiana,* 165 U. S. 578; *Patterson* v. *Bark Eudora,* 190 U. S. 169; *Godcharles* v. *Wigeman,* 113 Pennsylvania, 131; *State* v. *Goodwill,* 33 W. Va. 179.

The right to contract a debt or other obligation is included in the right to liberty and is also a right of property. *Kuhn* v. *Common Council of Detroit,* 96 Michigan, 534; *Lochner* v. *New York, supra; Ritchie* v. *People,* 115 Illinois, 98.

In *People* v. *Steele,* 231 Illinois, 340, an act to prevent speculating in theater tickets commonly called "scalping"

was declared to have no relation to the public health, safety, morals, or welfare, and was held unconstitutional, in that it arbitrarily deprived persons in the theater business, and brokers engaged in selling theater tickets, of liberty and property without due process of law.

Section 7 considered simply from the standpoint of an unlawful interference with liberty of contract and the taking of property without due process of law is unconstitutional, as it is not clear that in some way the public generally is affected either in health, morals or its general welfare. *Ritchie* v. *People*, 155 Illinois, 98; *Toney* v. *Steel*, 141 Alabama, 120; *State* v. *Krentzberg*, 114 Wisconsin, 530; *Coffeyville Vitrified Brick & T. Co.*, 69 Kansas, 297; *State* v. *Julow*, 129 Missouri, 163; *Gillespie* v. *People*, 188 Illinois, 176; *Liep.* v. *St. Louis, I. M. & S. R. Co.*, 58 Arkansas, 407; *Harding* v. *People*, 160 Illinois, 459; *State* v. *Missouri Tie & Timber Co.*, 181 Missouri, 536; *State* v. *Loomis*, 115 Missouri, 307; *Braunsville Coal Co.* v. *People*, 147 Illinois, 66; *Republic Iron & S. Co.* v. *State*, 160 Indiana, 379; *Commonwealth* v. *Perry*, 155 Massachusetts, 117.

A law to be constitutional and valid must be so formed as to extend to and embrace equally all persons who are or may be in the like situation or circumstances; and the classification also must be natural and reasonable, and not arbitrary or capricious. *Sutton* v. *State*, 96 Tennessee, 696; *State* v. *Loomis*, 115 Missouri, 307; *State* v. *Hann*, 61 Kansas, 146; *Magoun* v. *Bank*, 170 U. S. 283; *Eden* v. *People*, 161 Illinois, 296.

Section 8 is unconstitutional, as an unlawful interference with the liberty of contract, as it arbitrarily requires the consent of a party to the making of the assignment, who has no property interest in the subject-matter of the same.

A wife has no property interests in her husband's earnings as such. In Massachusetts in no statute is there

any provision giving her any such interest in said earning.

This is clearly an unlawful interference with the liberty to contract. *Fladney* v. *Sydnor*, 172 Missouri, 318.

The exemptions in § 6 render the act unconstitutional.

Statutes exempting building and loan associations stand on a different footing and can be distinguished; see *Bailey* v. *People*, 190 Illinois, 28; *Re Home Discount Co.*, 147 Fed. Rep. 538; *Vanzant* v. *Waddell*, 2 Yerger, 260, 270; *Gulf, Colorado & Santa Fe Ry. Co.* v. *Ellis*, 165 U. S. 156; *State* v. *Loomis*, 115 Missouri, 307; *Santa Clara* v. *Southern Pacific R. R. Co.*, 18 Fed. Rep. 385.

There was no appearance or brief for defendant in error.

MR. JUSTICE MCKENNA delivered the opinion of the court.

The question in the case is the validity, under the Fourteenth Amendment of the Constitution of the United States, of a statute of the State of Massachusetts (Stat. 1908, c. 605) which (§ 7) makes invalid against the employer of a person any assignment of or order for wages to be earned in the future to secure a loan of less than $200 until the assignment or order be accepted in writing by the employer and the assignment or order and acceptance be filed and recorded with the clerk of the city or town in the place of residence or employment, according as the person making the assignment be or be not a resident of the Commonwealth. If such person be married, the written consent of his wife must be attached to the assignment or order. (Section 8.) National banks and banks which are under the supervision of the bank commissioner, and certain loan companies, are exempt from the provisions of the act. (Section 6.)

The action is in contract on two promissory notes given by two different persons with an assignment by each of wages to be earned in the future in the defendant's service (defendant in error here, and we will so designate him, and the plaintiff in error as plaintiff). The assignments were duly recorded, but were not accepted in writing by defendant. The assignor in the second assignment was a married man whose wife did not consent to the assignment.

Judgment was entered in the Superior Court for the defendant, which was affirmed by the Supreme Judicial Court of Massachusetts. 200 Massachusetts, 482.

The contention of plaintiff is (1) that the provisions of §§ 7 and 8 deprive it of due process of law, and (2) that § 6 deprives it of the equal protection of the laws.

(1) To sustain this contention it is urged that the statute being an exercise of the police power of the State, its purpose must have "some clear, real and substantial connection" with the preservation of the public health, safety, morals or general welfare, and it is insisted that the statute of Massachusetts has not such connection and is therefore invalid.

This court has had many occasions to define, in general terms, the police power and to give particularity to the definitions by special applications. In *Chicago, Burlington & Quincy Ry. Co.* v. *Drainage Commissioners,* 200 U. S. 561, 592, it was said that "the police power of a State embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals or the public safety," and that the validity of a police regulation "must depend upon the circumstances of each case and the character of the regulation, whether arbitrary or reasonable and whether really designed to accomplish a legitimate public purpose."

In *Bacon* v. *Walker,* 204 U. S. 311, 318, it was decided that the police power is not confined "to the suppression

of what is offensive, disorderly or unsanitary," but "extends to so dealing with the conditions which exist in the State as to bring out of them the greatest welfare of its people."

In a sense, the police power is but another name for the power of government, and a contention that a particular exercise of it offends the due process clause of the Constitution is apt to be very intangible to a precise consideration and answer. Certain general principles, however, must be taken for granted. It is certainly the province of the State, by its legislature, to adopt such policy as to it seems best. There are constitutional limitations, of course, but these allow a very comprehensive range of judgment. And within that range the Massachusetts statute can be justified. Legislation cannot be judged by theoretical standards. It must be tested by the concrete conditions which induced it, and this test was applied by the Supreme Judicial Court of Massachusetts in passing on the validity of the statute under review.

The court hesitated to say, as at least, one court has said, that a total prohibition of the assignment of wages would be valid, but justified the partial restriction of the statute on the ground that the extravagance or improvidence of the wage-earner might tempt to the disposition of wages to be earned, and he and his family, deprived of the means of support, might become a public charge. It was pointed out besides that his needs might be taken advantage of by the unscrupulous. The purposes of the statute are certainly assisted by the formalities which it prescribes as requisite to the validity of an assignment. The requirement that it (the assignment) be accepted in writing by the employer, it was pointed out, protects him and secures the assignment from dispute; and the requirement that the acceptance and the assignment be recorded checks an attempt of the wage-earner to procure a dishonest credit.

The court found more difficulty with the provision which requires the consent of the wage-earner's wife to the assignment, but justified it on the general considerations we have mentioned, and on the ground of her interest in the right use of his wages, though she have no legal title in them.

We cannot say, therefore, that the statute as a police regulation is arbitrary and unreasonable and not designed to accomplish a legitimate public purpose. We certainly cannot oppose to the legislation our notions of its necessity, and we have expressed "the propriety of deferring to the tribunals on the spot." Laurel Hill Cemetery v. San Francisco, 216 U. S. 358, 365.

There are other grounds upon which the statute may be sustained than those expressed by the Supreme Judicial Court of the State. As we have seen, it does not prohibit assignments of wages to be earned. It prescribes conditions to the validity of such assignments, and in this it has many examples in legislation. It has the same general foundation that laws have which prescribe the evidence of transactions and the manner of the execution and authentication of legal instruments. The laws of the States exhibit in their diversities the power of the legislature over property, its devolution and transfer. It is rather late in the day to question that power. See Arnett v. Reade, 220 U. S. 311.

But if we consider the Massachusetts statute strictly, as a limitation upon the power of contract it still must be held valid. A statute not unlike it came before this court in Knoxsville Iron Co. v. Harbison, 183 U. S. 13. It was a statute of the State of Tennessee and required the redemption in cash of any store orders or other evidence of indebtedness issued by employers in payment of wages due to employés. It was assailed as an arbitrary interference with the right of contract. It was sustained as a proper exercise of the power of the State.

There must, indeed, be a certain freedom of contract, and, as there cannot be a precise, verbal expression of the limitations of it, arguments against any particular limitation may have plausible strength, and yet many legal restrictions have been and must be put upon such freedom in adapting human laws to human conduct and necessities. A too precise reasoning should not be exercised, and before this court may interfere there must be a clear case of abuse of power. See *Chicago, Burlington & Quincy R. R. Co.* v. *McGuire,* 219 U. S. 549, where the right of contract and its limitation by the legislature are fully discussed.

(2) This contention attacks § 6 of the statute which exempts from its provisions certain banks, banking institutions and loan companies. It is urged that the provision is discriminatory and therefore denies to plaintiff the equal protection of the laws.

We have declared so often the wide range of discretion which the legislature possesses in classifying the objects of its legislation that we may be excused from a citation of the cases. We shall only repeat that the classification need not be scientific nor logically appropriate, and if not palpably arbitrary and is uniform within the class, it is within such discretion. The legislation under review was directed at certain evils which had arisen, and the legislature, considering them and from whence they arose, might have thought or discerned that they could not or would not arise from a greater freedom to the institutions mentioned than to individuals. This was the view that the Supreme Judicial Court took, and, we think, rightly took. The court said that the legislature might have decided that the dangers which the statute was intended to prevent would not exist in any considerable degree in loans made by institutions which were under the supervision of bank commissioners, and "believed rightly that the business done by them would not need regulation in the inter-

est of employés or employers," citing *State* v. *Wickenhoefer*, 64 Atl. Rep. 273, a decision by the Supreme Court of Delaware. See *Engel* v. *O'Malley*, 219 U. S. 128.

But even if some degree of evil which the statute was intended to prevent could be ascribed to loans made by the exempted institutions, their exception would not make the law unconstitutional. Legislation may recognize degrees of evil without being arbitrary, unreasonable, or in conflict with the equal protection provision of the Fourteenth Amendment to the Constitution of the United States. *Ozan Lumber Co.* v. *Union Bank*, 207 U. S. 251; *Heath & Milligan Co.* v. *Worst*, Id. 338.

This court sustained a classification like that of the Massachusetts statute in *Griffith* v. *Connecticut*, 218 U. S. 563, where a statute of Connecticut, which fixed maximum rates of interest upon money loaned within the State to persons subject to its jurisdiction was upheld as a valid exercise of the police power of the State; and a provision of the statute which exempted from its operation "any national bank or trust company duly incorporated under the laws of the State, and pawnbrokers," was decided to be a legal classification.

*Judgment affirmed.*