299 So.2d 282

**James C. CRABTREE, III, d/b/a Alabama Wrecker Service**

**v.**

**The CITY OF BIRMINGHAM et al.**

**SC 531.**

Supreme Court of Alabama.

Aug. 22, 1974.

Holt & Cooper, and John P. Whittington, Birmingham, for appellant.

William A. Thompson, Birmingham, for the City of Birmingham, and others.

JONES, Justice.

This is an appeal from the Circuit Court of Jefferson County, in equity, wherein a final decree was rendered adverse to appellant/complainant, James C. Crabtree, III, who filed a Bill of Declaratory Judgment praying that City of Birmingham Ordinance 69–75 be declared unconstitutional.

Crabtree concedes that the City of Birmingham possesses the power to regulate the wrecker business within the corporate limits of that city. He does contest, however, the power of the municipality to grant an exclusive contract to one wrecker service for operation of a wrecker business and at the same time establish one set of regulations for the exclusive franchisee and another set for all other wrecker services, including the appellant.

Counsel for the appellant's brief summarizes his contention as follows:

"[T]he Appellee has created an exclusive franchise with one wrecker service and granted exclusive privileges to the same wrecker service. The provisions of said ordinance are unduly burdensome and discriminatory to the Appellant's contravention of the Fourteenth Amendment to the United States Constitution and Section 22 of the Alabama Constitution.

"The Appellee, under the exercise of its police power, has the right to regulate wreckers or towing vehicles on the streets of the City to prevent traffic congestion and the damages incident thereto. The ordinance regulating such business, however, must be exacted in furtherance of the public safety and public welfare; and the regulatory provisions must apply to all wrecker services.

.   .   .

"The Appellee's primary method of regulation is in the form of Ordinance 69–75 which awards an exclusive privilege to one wrecker service, and thereby limits the number of viable wrecker services in the City to one. This method of regulation, limitation of one wrecker service, does not bear a reasonable relation to the purpose to be accomplished by the ordinance in question   .   .   .   .

"The Appellee allows the contract wrecker service to employ the use of short ban radio monitored to the Birmingham Police Department (Ordinance 69–75), but denies this right to the Appellants. This ordinance is erected under the guise of the police power of the Appellee, but, in essence, is simply a denial of the equal protection of the laws."

We note at the outset, then, that appellant has invoked our review in the limited context of his contention that he should be permitted to maintain a short wave radio

for the monitoring of police calls in the same manner and to the same extent as allowed the contract wrecker service.

The issues dispositive of this appeal are:

1. Whether the exceptions granted to the exclusive franchisee in City of Birmingham Ordinance 69–75 violate the 14th Amendment to the United States Constitution (guaranties of due process and equal protection), and

2. Whether the Ordinance violates Article I, § 22, Constitution of Alabama of 1901 (prohibiting the passage of laws impairing the obligations of contracts, or making any irrevocable or exclusive grants of special privileges or immunities).

We answer both questions in the negative and thereby uphold the constitutionality of the Ordinance. In so holding, we emphasize that we have confined our consideration to the sole and narrow contention presented and argued by counsel for the parties as noted above. We affirm.

Ordinance No. 69–75, in pertinent part, provides:

"Section 1. It shall be unlawful for any person to send, operate, or direct a motor vehicle wrecker to the location or scene of an accident or disabled vehicle in the City of Birmingham if information as to such accident or disabled vehicle is obtained directly or indirectly from Birmingham police short wave radio calls or transmissions; provided that this section shall not apply to information obtained from calls made by the Police Department of said city or a policeman thereof directly to a particular wrecker service or business requesting a wrecker be sent by said service or business to the scene of an accident or disabled motor vehicle.

"Section 2. It shall be unlawful for any person, firm or corporation operating a motor vehicle wrecker service or business in the City of Birmingham, or any employee of such service or business, to permit any radio at such place of business or in any vehicle used in such business to be tuned to the Birmingham Police Department short wave radio band or otherwise tuned or set so as to intercept or receive Birmingham Police short wave radio calls or transmissions.

"Section 3. It shall be unlawful for any person engaged in operating a motor vehicle wrecker service or business or any employee of such service or business to solicit patronage for such wrecker service or business at the scene of a motor vehicle accident in the City of Birmingham within one hour after the occurrence of such accident.

"Section 4. It shall be unlawful for any person, firm or corporation to send, operate or direct a motor vehicle wrecker to the location, or the scene of an accident or disabled vehicle in the City of Birmingham unless requested to do so by the owner or person in charge or possession of such vehicle and after obtaining the name and residence address of such owner or person in charge or possession thereof. It shall be unlawful for any person in charge of or operating a wrecker to remove a disabled motor vehicle from the scene of an accident without furnishing a police officer at such scene the name and address of the person requesting the removal of such disabled motor vehicle when requested by such officer to do so.

"Section 5. The provisions of Sections 1, 2 and the first sentence of Section 4 of this Ordinance shall not apply to a wrecker service or business under written contract with the City of Birmingham to furnish wrecker service to said City at the request of the Police Department thereof."

The amended complaint was filed January 3, 1973. On February 6, 1973, James C. Parsons, Chief of Police of Birmingham, issued General Order 3–73 relative to

the procedure for police department vehicles tow service, providing:

"B. *Private Notification*

"1. Effective with the implementation of this General Order wrecker service for those individuals who require same shall be the wrecker service company of the motorist's choice." [1]

For many years Kemp's Garage has been the City's contract wrecker service. Crabtree, along with 63 others, operate wrecker services in the City of Birmingham. The Ordinance prohibits his use of radios tuned to the Birmingham Police Department short wave band to locate accidents while Birmingham's contract wrecker service (Kemp's) is specifically exempt from this restriction. Neither Crabtree nor Kemp's is permitted to go to an accident unless called. Prior to General Order 3-73, the victim of an accident had to request a wrecker service other than the contract wrecker service, and the victim had to personally call another wrecker service (other than the contract wrecker service) before such wrecker service could go to the accident. The police, pursuant to General Order 3-73, will now call the wrecker service requested in "private notification" the accident. The police, pursuant to Gen-situations. The contract wrecker service is able to dispatch wreckers to the general area of an accident even prior to receiving the call from the police department through use of a police short wave radio band.

In past years, through the City's departmental regulations, the contractual requirements for prospective contract wrecker services provided that the wrecker service must be located within one-half mile of the Birmingham City Hall. During this time, Kemp's was the only wrecker service in Birmingham physically located within one-half mile of City Hall. With the opening of part of the interstate highway network in Birmingham, Kemp's had to relocate three-fourths mile from City Hall. Accordingly, Birmingham changed the contractual requirements for city wrecker service to three-fourths mile from City Hall.

The contractual requirements formerly called for any city wrecker service to have 100,000 square feet of vehicular storage area. Crabtree found property within the required distance of City Hall with 110,000 square feet of storage area. While appellant was negotiating for this property, which would have permitted him to bid on Birmingham's contract wrecker service, Birmingham raised the storage area requirement to 150,000 square feet.

The appellant's primary contention is that Ordinance 69-75 grants an exclusive contract to Kemp's and is thus unconstitutional as a denial of equal protection; but, in essence, his entire argument centers around, and is thus thereby weakened by, his continued assertion that he should be entitled to solicit business (i. e., "chase wrecks") as, he claims, Kemp's is permitted to do.

A careful reading of the Ordinance clearly shows that while only Kemp's is permitted to use short wave radios tuned to the police band in order to hear reports of accidents, Section 3 points out that no wrecker service, including the one presently under contract to the City, is permitted to "chase wrecks." Kemp's is permitted, to be sure, upon hearing of an accident on the radio, to proceed towards the location of the accident before they are actually summoned; but Kemp's is not allowed to arrive at the scene unless they are specifically summoned to do so by either the police or the private individual involved. This is not such an unreasonable exemption or advantage afforded Kemp's since one under contract for his services, and rightfully so, stands in a special relation-

---

1. Wrecker service for those individuals who have been arrested or whose vehicles have been impounded is provided for in the General Order under "A. *Department Notification.*"

ship to the City as compared to other non-contract wrecker services. The whole purpose of having one specific wrecker service under contract is to aid the City in the speed and efficiency with which vehicles are removed from the streets, thereby also protecting the public's safety. ·

Furthermore, while prior to the issuance of General Order 3–73, the victim of an accident had to request on his own initiative that another wrecker service be summoned and then personally go to a telephone to call them, or the contract wrecker service would automatically be called—admittedly condemnable as a rather monopolistic practice in a competitive field of enterprise—this practice has been fully corrected by the General Order. Now, Kemp's is only automatically called to the scene when either the driver has been arrested or the vehicle is otherwise impounded by the City. In all other situations, the police officer in charge inquires of the individuals involved which wrecker service they prefer and then summons that particular service to the scene by means of his radio.

The appellant also erroneously claims that under Ordinance 69–75 he must automatically furnish the policeman at the scene the name and address of the individual requesting his services while Kemp's does not; but, again, a careful reading of the Ordinance clearly shows that every wrecker, whether under contract to the City or not, must only furnish such information when requested to do so by the policeman in charge.

Thus, while the ordinance does exempt Kemp's from the restrictions concerning the possession and use of short wave radios (which, incidentally, is maintained at their place of business only), the exemption is not such that its effect is to stifle the competition. Actually, its only effect is to expedite the removal of vehicles for which the City is responsible, and for which it has the right to contract with others for the fulfillment of this duty.

█ Appellant contends that Section 5 of the City of Birmingham Ordinance 69–75 is violative of § 22, Constitution of Alabama of 1901, which guarantees the equal protection of the laws, protects persons as to their inalienable rights; prohibits one from being deprived of his inalienable rights without due process; and prohibits irrevocable or exclusive grants of special privileges or immunities. Pickett v. Matthews, 238 Ala. 542, 192 So. 261 (1939). But the mere fact of inequality is not enough to invalidate a law, and the legislative body must be allowed a wide field of choice in determining what shall come within the class of permitted activities and what shall be excluded. Lane v. McFadyen, 259 Ala. 205, 66 So.2d 83 (1953).

█ It is well settled in this state that the right to use the public streets for hire is not a right of public or private enterprise but is a privilege—generally called a franchise—subject to the consent and regulation of the municipality. Barron v. Wilson, 278 Ala. 621, 179 So.2d 746 (1965); City of Decatur et al. v. Meadors, 235 Ala. 544, 180 So. 550 (1938); City of Mobile v. Farrell, 229 Ala. 582, 158 So. 539 (1934); McLendon v. Boyles Transit Company, 210 Ala. 529, 98 So. 581 (1923); and Birmingham Interurban Taxicab Service Corporation v. McLendon, 210 Ala. 525, 98 So. 578 (1923). In such use of the public streets, it is wholly within the province of the municipal authorities under § 220, Alabama Constitution, to grant its consent or withhold it to any person or group. Thus, the municipality, in the exercise of this authority granted by § 220, coupled with the police powers granted municipalities by the state, has the irrevisable discretion to determine whether, and to what extent, a service is needed, and to fix and determine the streets and to name the grantee of such right. City of Mobile v. Farrell, supra. As such, the municipalities are only limited in the exercise of such discretion by §§ 22 and 228 of the Constitution which restricts the power to grant franchises to those that are not exclusive or perpetual. The limita-

tions embodied in those provisions, however, are not for the protection of individuals, but for the protection of the municipalities and the public generally. City of Decatur et al. v. Meadors, supra.

This Court has often stated the principles by which it is guided in determining the constitutionality of a legislative act. In Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 18 So.2d 810 (1944), Chief Justice Gardner summarized this State's law:

"Uniformly, the courts recognize that this power [to strike down a legislative act as violative of the constitution] is a delicate one, and to be used with great caution. It should be borne in mind, also, that legislative power is not derived either from the state or federal constitutions. These instruments are only limitations upon the power. Apart from limitations imposed by these fundamental charters of government, the power of the legislature has no bounds and is as plenary as that of the British Parliament. It follows that, in passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law . . . .

"[5] Another principle which is recognized with practical unanimity, and leading to the same end, is that the courts do not hold statutes invalid because they think there are elements therein which are violative of natural justice or in conflict with the court's notions of natural, social, or political rights of the citizen, not guaranteed by the constitution itself. Nor even if the courts think the act is harsh, or in some degree unfair, and presents chances for abuse, or is of doubtful propriety. All of these questions of propriety, wisdom, necessity, utility, and expediency are held exclusively for the legislative bodies, and are matters with which the courts have no concern. This principle is embraced within the simple statement that the only question for the court to decide is one of power, not of expediency or wisdom."

██ We reaffirm the foregoing statement to be the law of this jurisdiction. In determining the constitutionality of a legislative act, we will not look to its propriety. Rather, we will determine whether it is expressly prohibited by the Constitution itself or is violative of those fundamental rights constitutionally guaranteed (e.g., equal protection and due process). In testing the reasonableness of Section 5 (excepting the contract wrecker service from the police call monitoring prohibition), we need only to visualize the total chaos, along with the enhanced traffic hazard, that would result if 64—instead of one—wrecker services dispatched one wrecker each to a single traffic accident. In the context here applicable, we find that the Ordinance makes a reasonable classification and does not violate due process or equal protection clauses of either the State or Federal Constitution. See City of Chattanooga v. Fanburg, 196 Tenn. 226, 265 S.W.2d 15 (1954).

Admittedly, certain of the foregoing facts weave a pattern of circumstances which support the inference that the contract's terms are being designed and altered to specifically fit Kemp's situation. The question arises, then, not on the legislative authority of the City to enact such ordinances and enter into such contracts, but whether the contract—made under the regulatory power of a municipality—is illegal as being arbitrary and exclusive.

We have strained at the issues framed below, the errors here properly assigned, along with the appellant's brief, and we must perforce conclude that the potential issue of denial of equal protection based on

the arbitrariness and exclusiveness of these *departmental regulations* was presented neither to the court below nor is such issue properly before us for our consideration. In other words, appellant has elected to anchor his case on the single contention that he has the right to "chase wrecks," and not on his right as a potential bidder for the contract. Therefore, we pretermit any discussion or consideration as to the validity of the regulatory authority to expand or enlarge upon the power or authority granted by the Ordinance.

■■■ In passing, however, we are compelled to observe that the exercise of such power does not grant carte blanche discretion to the City in its drafting of the specifications for qualification of the bidders in such a manner as to be violative of fundamental constitutional rights. Clearly, assuming the validity of the Ordinance, departmental regulations supplementing such ordinances must meet the same test of reasonableness, and any such contract resulting from arbitrary regulatory requirements favoring one potential bidder to the exclusion of all others would fail to meet such a test. State v. Campbell, 95 R.I. 370, 187 A.2d 543, 6 A.L.R.3d 499 (1963). The validity of a police regulation, therefore, primarily depends on whether, under all the existing circumstances, the regulation is reasonable, and whether it is really designed to accomplish a purpose properly falling within the scope of the police power. Mutual Loan Co. v. Martell, 222 U.S. 225, 32 S.Ct. 74, 56 L.Ed. 175 (1911). A regulation, and the administration thereof, is deemed reasonable where, although perhaps not the wisest and best that might be adopted, it is fit and appropriate to the end of protecting the public, and is manifestly adopted in *good faith* for that purpose. If a condition should be clearly arbitrary and capricious; if no reason with reference to the end in view could be assigned for it; and, especially, if it appeared that it must have been adopted for some other purpose —such, for instance, as to favor or benefit some person—it certainly would not be reasonable, and would be beyond the power of the legislature to impose. Parkes v. Bartlett, 236 Mich. 460, 210 N.W. 492, 47 A.L.R. 1128 (1926). Otherwise stated, the law would look with disfavor on any supplemental regulatory requirements that had as its effect the cutting of the pattern to fit the cloth. See City of Mobile v. Farrell, supra.

In conclusion, we note that the trial judge admonished the attorneys at the outset of the trial, "Gentlemen, we're going to conduct this hearing on the basis of forget the evidence idea, forget the law, forget anything else, I'm going to let everybody tell it the way they want, so go ahead and talk."

Notwithstanding his injudicious admonition, our review being confined to the issues presented and argued, we hold that the Court below, unhampered and unhindered by either the law or the facts, fortuitously ruled correctly.

Affirmed.

COLEMAN, HARWOOD, BLOODWORTH and McCALL, JJ., concur.