Defendant, Baldwin County Board of Health (Board of Health), appeals from a judgment for plaintiff, Baldwin County Electric Membership Corporation (Co-op), in a declaratory judgment action, holding, that Sections 4 (b) 1, 2, and 3 and Sections 5 (a) and (b) of the Board of Health regulations (adopted on April 7, 1974) requiring an applicant for utility service to obtain a certificate of site approval from the Board of Health prior to the installation of utility service, are an unconstitutional exercise of the law making power and impose an unreasonable restriction upon the operation of a private utility. The court also held that the Co-op may furnish electric service to defendant, Donald R. Nelson, without obtaining a prior "certificate of site" approval, as required by the regulations, and without suffering the penalties provided in those regulations. We affirm. *Page 709 
Plaintiff, Co-op, is a rural electric membership co-operative organized for the purpose of providing electric power to its members. It instituted this action after one of its members, Nelson, applied to it for electric service. The Co-op contacted Mr. C.K. Zehner, an employee of the Board of Health, to obtain permission to connect said service, but the Co-op was advised by Mr. Zehner that permission would not be granted since Nelson did not have the required "certificate of site approval." A certificate states that the means of sewage disposal has been approved by the Board of Health. Nelson informed the Co-op that he would sue it in order to enforce his rights as a member. Plaintiff Co-op then brought this action for declaratory judgment in order to determine how it should proceed with respect to the request for service by Nelson and to determine what effect the regulations have upon it in its distribution of electric energy.
The case was heard, ore tenus, and the trial court entered a judgment for plaintiff Co-op.
The Board of Health contends, on this appeal, that the trial court erred in holding the Board's regulations constitute an unconstitutional delegation of legislative power because the Board's authority to enact such regulations is broad enough to withstand constitutional attack. The Board also contends the trial court erred in striking down the regulations because, in so doing, it substituted its judgment as to public health for that of the Board. The Board of Health further contends the trial court erred in its finding that the regulations impose an unreasonable restriction on the operation of a private utility because, they allege, the regulations bear a reasonable relationship to public health since they aid in enforcing the State's sanitation laws.
Even if we were to assume, for the sake of argument, that the Board is correct with respect to its argument that the regulations do not constitute an unconstitutional delegation of legislative power, our decision to affirm this case would have to stand. We think it clear that the regulations in question are beyond the state's police power, and hence, unconstitutional. Moreover, they violate § 104 (14) of the Alabama Constitution.
The regulations in question which were adopted pursuant to Tit. 22, § 8, Code of Alabama 1940, the trial court held, provide, in pertinent part, as follows:
"Section 4. Certificate of site approval . . .
* * * * * *
"(b) Utility Service
 "(1) Utility service for new construction shall not be supplied to an applicant unless a certificate of site approval has been granted by the Health Officer and the utility company has been notified accordingly.
 "(2) Utility service shall not be supplied to mobile homes, travel trailer or relocated structure until a certificate of approval of the sewer system has been forwarded to the utility.
 "(3) Exceptions to the provisions of this subsection shall be made on an individual case basis by the Health Officer.
"Section 5. Violations and Penalties
 "(a) It shall be unlawful for any public utility company to connect or make available for use any service, which tends to add or encourage occupancy of any new structure, unless a certificate of site approval has been issued by the Health Officer.
 "(b) Any person who violates any provisions of these regulations or resists or interferes with the Health Officer in the enforcement of the regulations, shall be guilty of a misdemeanor, and upon conviction may be punished pursuant to Title 22, Section 103 and 104 of the Code of Alabama, 1940 as amended. Each day any person is in violation constitutes a separate offense."
The Board of Health contends these regulations are a proper exercise of the state's police power. We cannot agree.
The limits of a state's police power are very broad and difficult to precisely delineate. In fact, the term "police power" is one *Page 710 
of those legal terms which is peculiarly ephemeral by its very nature. Nevertheless, this court has, on a number of occasions, defined the state's police power and articulated its boundaries.
In Alabama State Federation of Labor v. McAdory, 246 Ala. 1,18 So.2d 810 (1944), this Court observed.
 ". . . The limits of a state's police power have never been fixed nor its boundaries defined. This for the reason that it is not subject to any definite limitations or boundaries, for it represents the state's great reserve power, and at all times is coextensive with the necessity of the case and the safeguard of public interest. It is a power inherent in the government, and while it may be set aside by the Constitution, yet in order to find that it has been so set aside, the Constitution must plainly so indicate. And the authorities agree it is a peculiar function of the law-makers to determine when the welfare of the people requires the exercise of the state's police power and what are appropriate measures to that end, subject only to the power of the courts to judge whether any particular law is an invasion of rights secured by the Constitution. (Citations omitted.)"
* * * * * *
 ". . . [T]he police power may not unreasonably invade private rights guaranteed under the federal or state constitution. And, as we observed in State v. Polakow's Realty Experts, supra, all regulations involve in some degree a limitation upon the exercise of the right regulated. The test is whether the limitation imposed is really by way of regulation only and is one whose purpose and effect go no further than throw reasonable safeguards in the public interest around the exercise of the right. If the limitation is of this character, its imposition is a proper exercise of the police power resident in the legislature and whose exercise is one of the latter's most important functions.
 "As we have observed, this power must not be exercised arbitrarily or capriciously, and there must be some reasonable relation to the regulation and the ends to be attained."
In Crabtree v. City of Birmingham, 292 Ala. 684,299 So.2d 282 (1974), this Court held:
 ". . . The validity of a police regulation, therefore, primarily depends on whether, under all the existing circumstances, the regulation is reasonable, and whether it is really designed to accomplish a purpose properly falling within the scope of the police power. Mutual Loan Co. v. Martell, 222 U.S. 225, 32 S.Ct. 74, 56 L.Ed. 175
(1911). . . . Otherwise stated, the law would look with disfavor on any supplemental regulatory requirements that had as its effect the cutting of the pattern to fit the cloth. See City of Mobile v. Farrell, 229 Ala. 582, 158 So. 539 supra." [Emphasis supplied.]
It is apparent, therefore, that the central inquiry is "reasonableness." In order for regulations, such as the ones in question, to be sustained, they must be reasonable and must bear some substantial relationship to the public need or general welfare. The regulations in this case do not meet that test.
No one would dispute the fact that regulations may be adopted in order to preserve and foster the public health. However, those regulations must be reasonable. The regulations here require that a certificate of site approval be obtained from the Board of Health prior to installation of electric service. We do not think that this requirement is reasonable.
The Board of Health argues that these regulations properly advance the cause of sanitation. It contends that if electricity is connected without first obtaining the certificate of site approval, then the use of that electricity will allow residents to pump water, heat water with which to bathe or flush toilets, operate dishwashers, washing machines, and various other activities, all of which could create a public health menace, absent a septic tank. The Board of Health also contends these regulations will ease its work load. *Page 711 
We agree that sanitation is both a worthy and a necessary goal. However, we agree with the observation of Mr. Justice Jones, in Crabtree v. City of Birmingham, supra, that the law cannot condone a regulatory requirement, such as the one in question, which, in effect, "cut[s] the pattern to fit the cloth." Moreover, while we agree these regulations would ease the Board of Health's work load, administrative ease cannot justify regulations which "put the cart before the horse."
In short, we fail to perceive why and how the public health and welfare is advanced by regulations which, in effect, make the installation of a septic tank the sine qua non for obtaining electric power. Or, put another way, we think the means employed bear no rational relationship to the ends sought to be achieved.
The Board of Health argues, however, that the Court of Civil Appeals, in Turnbull v. Rencher, 53 Ala. App. 12, 296 So.2d 912
(1974), has upheld the authority of the Baldwin County Board of Health to adopt sanitation regulations which prohibit the building of homes or commercial concerns without proper sanitation. We think there are at least two answers to this contention. First, it is apparent that the regulations inTurnbull required approval of the Board of Health prior to installation of a septic tank rather than electric power. Second, the plaintiffs in that case did not question the authority of the Board of Health to pass such regulations, and thus the Board's authority to do so was not an issue.
There is yet another reason why these regulations are unconstitutional. They violate § 104 (14) of the Alabama Constitution.
Section 104 (14) of the Constitution provides that "the legislature shall not pass a special, private, or local law in any of the following cases: . . . (14) Fixing the punishment of a crime;. . . ."
In this case, the regulations do not expressly fix punishment, but they provide that the penalty for violation is governed by Tit. 22, §§ 103-104, Code. Where, as here, such regulations have the force and effect of law, by virtue of Tit. 22, § 8, Code, we hold, as we did in Williams v. Kelley,289 Ala. 440, 268 So.2d 485 (1972), that it would be incongruous to prohibit the lawmaking body of the state from so acting, and to allow an agency of that same body to create a rule which has the same effect. Thus, we hold that the regulations in question, having the force and effect of law, violate Section 104 (14) of the Alabama Constitution, in that their promulgation effects the passage of a local law fixing the punishment of crime in Baldwin County.
 ". . . Since the legislature itself could not effect passage of an act embodying the terms of this regulation, it would seem obvious that the administrative agency, being a creature of and deriving its powers from the legislature, would possess no such power.
 "Otherwise, the legislature, by the simple expedient of creating an agency, could confer that agency with powers it does not itself possess because of constitutional prohibitions, and the Constitution would thus be circumvented.
 "In State v. Alabama Power Co., 254 Ala. 327, 340, 48 So.2d 445, 455 (1950), this Court expressly held that notwithstanding `* * * the legislature [itself] has made no effort to contravene the Constitution of the State * * * it could not do indirectly what the constitution forbids being done directly.' (Emphasis ours)"
Williams v. Kelley, supra.
For the foregoing reasons, therefore, this case is due to be affirmed.
AFFIRMED.
FAULKNER, ALMON, EMBRY and BEATTY, JJ., concur. *Page 712