This is an appeal from a judgment of the Circuit Court of Montgomery County, enjoining Ross Neely Express,. Inc. (RNE) from violating certain rules and regulations of the Alabama Department of Environmental Management (ADEM). In issuing the injunction, the trial court found that RNE was in violation, and that the rules violated were not unconstitutional. The pertinent portions of the rules allegedly violated are as follows:
 4.2.1 No person shall cause, suffer, allow, or permit . . . a road to be used . . . without taking reasonable precautions to prevent particulate matter from becoming airborne. Such reasonable precautions shall include, but not be limited to, the following:
. . . .
 (b) Application of asphalt, oil, water, or suitable chemicals on dirt roads, materials stock piles, and other surfaces which create airborne dust problems;
. . . .
 4.2.2 Visible Emissions Restrictions Beyond Lot Line. No person shall cause or permit the discharge of visible fugitive dust emissions beyond the lot line of the property on which the emissions originate.
The case was tried on an "agreed statement of facts," here printed in its entirety:
 1. Ross Neely Express, Inc., an Alabama corporation, operating in intrastate and interstate commerce pursuant to authority from the Alabama Public Service Commission and the Interstate Commerce Commission, leases a facility and operates a truck terminal located at 3370 Birmingham *Page 84 
Highway (Alabama Highway 3 and U.S. Highways 31 and 82), in Montgomery County.
 2. Leading to such facility is a 33-ft. long access road (including a 70-ft. long portion that belongs to the State of Alabama and is part of the State's right of way). At the time of the construction of the above facility in 1974, approximately 50 to 60 truckloads of slag were used in the construction of such access road; since that time, on at least four occasions, additional slag along with red chert has been added to the road surface. Between the construction of the facility and road in 1974 and 1979, on at least three occasions, oil was applied to the road's surface; however, use of oil on the road's surface was suspended because of the oil's splashing on vehicles and because oil was tracked onto the adjacent highway, creating slippery conditions.
 3. The above-described access road is used by Ross Neely's trucks (and other trucking company trucks), both inbound and outbound. Such use of the road (and allowance of such use) has resulted in the observations as to dust conditions by the Alabama Air Pollution Control Commission as shown on the attached Department of Public Health Memorandums on the dates shown (11/14/80, 12/22/80, 1/12/81, 1/14/81, 1/26/81, 4/20/81, 5/12/81, 5/14/81, and 5/18/81).
 4. Written notice of violation of the Alabama Air Pollution Control Commission's regulations was mailed to the above-described Montgomery terminal, addressed to the Terminal Manager; the return receipt for certified mail was postmarked in Montgomery on November 18, 1980, with the delivery date the same, and signed for by the Terminal Manager (copy of such violation and receipt attached).
 5. The Alabama Air Pollution Control Commission is an agency of the State of Alabama created pursuant to the Alabama Air Pollution Control Act of 1971 (Act No. 769, Regular Session, 1971), § 22-28-1, et seq., Code of Alabama 1975, as amended, and is designated thereby as the State agency responsible for the prevention, abatement and control of air pollution in the State of Alabama.
 6. Sections 4.2.1 and 4.2.2 of the Alabama Air Pollution Control Commission's Rules and Regulations were adopted pursuant to §§ 22-28-14 and 22-28-15, Code of Alabama 1975, as amended.
The issues presented on appeal are:
 1. Do the above facts show RNE to be in violation of § 4.2.1 and/or § 4.2.2 of the Alabama Department of Environmental Management's Rules and Regulations?
 2. Did the trial court err in finding that §§ 4.2.1 and 4.2.2 are constitutional?
Because we answer the second question affirmatively, and reverse on that issue, we find it unnecessary to address the first issue.
The right to due process is guaranteed to the citizens of Alabama under the Alabama Constitution of 1901, Article 1, Sections 6 and 13. This constitutional right to due process applies in civil actions as well as criminal proceedings. Pikev. Southern Bell Telephone and Telegraph Co., 263 Ala. 59,81 So.2d 254 (1955). The courts have found that this right is violated when a statute or regulation is unduly vague, unreasonable, or overbroad. In Kahalley v. State, 254 Ala. 482,48 So.2d 794 (1950), this court found a criminal misdemeanor statute to be unconstitutionally vague. There the court stated:
 [L]egislation may run afoul of the due process clause because of a failure to set up any sufficient guidance to those who would be law-abiding, or to advise a defendant of the nature and cause of an accusation he is called on to answer, or to guide the courts in the law's enforcement.
In reviewing a regulation of a county Board of Health, this court held that the central issue was reasonableness. BaldwinCounty Board of Health v. Baldwin County Electric MembershipCorporation, 355 So.2d 708 (Ala. 1978). In City of Russellvillev. Vulcan Materials Co., 382 So.2d 525 (Ala. 1980), this court said: *Page 85 
 The validity of a police power regulation . . . primarily depends on whether, under all the existing circumstances, the regulation is reasonable, and whether it is really designed to accomplish a purpose properly falling within the scope of the police power. Crabtree v. City of Birmingham, 292 Ala. 684, 299 So.2d 282 (1974). . . . Otherwise expressed, the police power may not be employed to prevent evils of a remote or highly problematical character. Nor may its exercise be justified when the restraint imposed upon the exercise of a private right is disproportionate to the amount of evil that will be corrected. Bolin v. State, 266 Ala. 256, 96 So.2d 582, conformed to in 39 Ala. App. 161, 96 So.2d 592
(1957).
Statutes and regulations are void for overbreadth if their object is achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms. See Zwicklerv. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967);Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675,17 L.Ed.2d 629 (1967).
In applying the above cited principles to the regulations challenged in the case before us, we find that both 4.2.1 and 4.2.2 are constitutionally defective. Regulation 4.2.1 requires that RNE not allow its road to be used without taking "reasonable" precautions to prevent particulate matter from becoming airborne, and lists certain precautions which shall be included. While "reasonableness" has been upheld as a legal standard in some cases, the fact remains that the regulation before us is so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. See Connally v. General Construction Co.,269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). How often should RNE have taken "reasonable" precautions? Must it take all of the suggested precautions, as well as others? If the precautions taken fail to eliminate airborne particulate matter completely, has RNE failed to take reasonable precautions per se?
The stipulated facts show that RNE used 50 to 60 truckloads of slag in the construction of the road in 1974. Since that time, on at least four occasions, slag and chert had been added to the road surface. On three occasions oil was applied to the surface. (We note that this was one of the suggested "reasonable precautions" contained in the regulation itself.) But in 1981, ADEM alleged that RNE was in violation of § 4.2.1 because dust had been observed rising from the road, and the trial court agreed. This appears to be a classic example of a case where men of common intelligence must necessarily guess as to the requirements of the regulation. See Connally v. GeneralConstruction Co., supra.
Regulation 4.2.2 is unconstitutionally restrictive. Visible fugitive dust emissions may not be permitted to float beyond the lot line of the property on which the emissions originate. Thus, the Department of Public Health memorandum of May 12, 1981, noted in the agreed statement of facts, showed a violation when it stated, "This writer observed fugitive dust which was created when a pickup truck drove to the plant. The fugitive dust went onto a vacant lot in front of A Liquid Air Inc. The wind was out of the southwest." Such a regulation is clearly overbroad, encompassing every situation in which visible fugitive dust emissions move across a lot line, without regard to damage, injury, or inconvenience caused, reasonable attempts at control, etc. This invades the area of protected freedom, severely restricting the use of property, and creates a situation where discriminatory enforcement is almost inevitable.
We find both of the regulations under consideration to be unreasonable. ADEM argues that they are a proper exercise of the police power of the State of Alabama, going to the protection of health, public convenience, public welfare, protection of property, and the maintenance of good order. SeeJames v. Todd, 267 Ala. 495, 103 So.2d 19 (1958); Alosi v.Jones, 234 Ala. 391, 174 So. 774 (1937). While the above matters are clearly subject to the police power, and while the control of air *Page 86 
pollution is greatly to be desired, we find that the restraint imposed by the two regulations before us, as written, imposes a restraint upon the use of private property that is disproportionate to the amount of evil that will be corrected. Thus, they fail the test of constitutionality under City ofRussellville v. Vulcan Materials Co., supra.
For all of the above reasons, the judgment of the trial court is due to be, and hereby is, reversed, and the case is remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.