RICHARD L. HOLMES, Retired Appellate Judge.
Baldwin County Electric Membership Corporation (Co-op) sought via declaratory judg *1033 ment to have a resolution of the Baldwin County Commission (Commission) declared invalid.
The resolution in question requires all utility companies operating in Baldwin County, Alabama, to do two things before providing permanent electrical service to new customers in the unincorporated areas of the county. First, the utility company is to notify the Baldwin County Budding Department (Department) of the customer’s name and proposed location when electrical service is requested for mobile homes or trailers. Then the utility company is to require the customer to provide a release from the Department before the utility company provides permanent service to such customer.
After a hearing the trial court determined that the above-referenced provisions of the resolution in question “are without authority and void and the [Co-op] will not be in violation of any law by its failure to comply with any requirement of said Resolution.” The order of the trial court also stated:
“The Court finds from the evidence in this ease that the Resolution adopted by the County Commission on, to-wit, February 5, 1991, exceeds the authority of the Baldwin County Commission to regulate or control the sale of electricity by Baldwin County Electric Membership Corporation to its members and that Baldwin County Electric Membership Corporation is not required to ascertain the existence of a valid permit before constructing its facilities necessary to serve electric energy to a member at a designated service point consistent with its own rules and regulations.”
The Commission appeals. This case is before this court pursuant to Ala.Code 1975, § 12-2-7(6). We affirm.
Initially, we note that the resolution in question was adopted because of the Commission’s concern that mobile homes and house trailers were being “set up” in Baldwin County without the appropriate building permit and/or certificate of occupancy. The Commission desired to ensure the safety, health, and general welfare of the inhabitants of mobile homes and house trailers by requiring an inspection of the electrical wiring and installation prior to occupancy. Consequently, the Commission adopted the resolution in question, which required new customers of the utility companies to obtain a “release” from the Department.
This court has little difficulty, if justified factually, in recognizing that an inspection of the electrical wiring and installation prior to occupancy may be essential to ensure the safety, health, and general welfare of the inhabitants of mobile homes and house trailers. Further, we recognize that in order for Baldwin County to accomplish such inspections, the customer requesting new electrical service might be required to obtain from the Department a permit for electrical service connection.
Our review of the record reveals the following: A copy of the resolution in question was admitted into evidence. As previously noted, this resolution stated, in pertinent part, that “before providing permanent service to such customers, the utility companies shall require the customer to provide a release from the Baldwin County Building Department.”
The first question we must answer is what does the Department require of the customer in order for the customer to obtain the necessary “release.”
The building official for the Department testified at the trial. He testified that, in the Department, a “building permit” and a “certificate of occupancy” are interchangeable terms and that a certificate of occupancy/building permit is issued when everything (electrical, tie-downs, septic tank, or sewer hook-up) has been approved. . He further testified that the Department does not issue an “electric permit” for mobile homes and house trailers, which would allow the utility company’s customer to have electricity at the designated service point, until the mobile home is ready to occupy.
There were several Co-op customers who testified at the trial. Each testified to the fact that when he went to the Department to obtain the necessary release/permit, the Department required a sewer/septic tank permit from the health department before it would issue the release required by the resolution in question.
*1034 It appears to this court that, based on our review of the record, this is Baldwin County Board of Health v. Baldwin County Electric Membership Corporation, 355 So.2d 708 (Ala.1978), revisited.
In Baldwin County Board of Health, the Co-op challenged a regulation which required the applicant for utility service to obtain a certifícate of site approval (which stated that the means of sewage disposal had the approval of the health department) prior to the installation of utility service. The supreme court determined that the regulation was an improper exercise of the state’s police power and that the means which had been employed bore no rational relationship to the ends which the health department sought to achieve.
The supreme court also stated that in order for such a regulation to be upheld, it “must be reasonable and must bear some substantial relationship to the public need or general welfare.” Baldwin County Board of Health, 355 So.2d at 710.
In the instant case, the record reveals that in order for the customer who has requested new electrical service to obtain the release required by the resolution in question, that customer must have secured a sewer/septic tank permit from the health department. This court cannot condone the manner in which the resolution in question was interpreted and enforced because it has “as its effect the cutting of the pattern to fit the cloth.” Crabtree v. City of Birmingham, 292 Ala. 684, 691, 299 So.2d 282, 289 (1974). In the present case, as in Baldwin County Board of Health, the means which were employed bear no substantial relationship to the ends sought to be achieved.
However, as indicated above, we should not be understood as holding that the Commission cannot, if warranted by the facts, adopt a resolution requiring a customer seeking new electrical service to obtain an “electric permit” from the Department before the utility company can provide permanent electrical service. However, this “electric permit” should be separate and distinct from the building permit/certificate of occupancy, which the Department currently issues for mobile homes and house trailers. The issuance of this “electric permit” should in no way be conditioned upon whether the individual has obtained a septic tank/sewer permit from the health department.
We note that the Co-op contends that the Southern Building Code and the National Electrical Code, contained therein, were not properly adopted by the Commission. (These are the codes upon which the resolution in question was based.) However, it appears to this court that the pre-trial order precludes this argument.
In view of the above, this case is due to be, and is, affirmed.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.