STUART, Justice.
K & D Automotive, Inc. (“K & D”), and Calvin S. Kendrick, its owner and president, appeal the summary judgment entered in favor of the City of Montgomery (“the City”); the City’s employees Eddie Hill, Jr., Nathaniel Bracy, and Scott Adams (hereinafter referred to collectively with the City as “the City defendants”); Tony’s Automotive, L.L.C. (“Tony’s Automotive”); and Tony’s Automotive’s owner Tony D. Brooks and manager Ellen F. Brooks (hereinafter referred to collectively with Tony’s Automotive as “the Tony’s Automotive defendants”). We affirm in part and reverse in part.
I.
Since 1991, K & D has operated an automobile-repair business known as K & D Automotive on leased premises at 3310 Biltmore Avenue in Montgomery; an automobile-repair business, not always K & D Automotivé, has existed at that location since 1974. Beginning some time in 2005 or 2006, inspectors for the City, including Bracy and Adams, began coming to K & D Automotive and telling Kendrick that some of the vehicles parked on-site were considered junk vehicles under municipal ordinance no. 28-2002 (“the City nuisance ordinance”). The City nuisance ordinance provides: “It shall be unlawful and is declared a nuisance for any owner, occupant or person in control of any property with *755 the City to allow the accumulation of litter, trash, [or] junk....” As amended by ordinance no. 46-2004 in June 2004, “junk” is defined in the City nuisance ordinance as:
“All vehicle parts, rubber tires, appliances, dilapidated furniture, machinery equipment, building material or other items which are either in a wholly or partially rusted, wrecked, junked, dismantled or inoperative condition. A motor vehicle will be considered inoperative for the purposes of this section if it cannot be safely operated or if it is incapable of being moved under its own power or if it may not be legally operated due to lack of any legal requirement including an expired license plate.”[1]
(Emphasis added.) Kendrick asserts in an affidavit filed with the trial court that he told the inspectors that he was operating an automobile-repair business and that, for that reason, there were and would continue to be inoperable vehicles on the property. When the inspectors requested to see work orders for the vehicles at K & D Automotive, Kendrick declined to produce them, stating that they contained private information that he could not disclose without his customers’ consent.
Kendrick further states in his affidavit that, at all times relevant to this action, a rotating group of approximately 25 to 35 vehicles that were in need of service were parked at K & D Automotive. Kendrick acknowledges that some of those vehicles were in need of major repair and were inoperable and that some of those vehicles lacked current license plates for a variety of reasons — some of the vehicles were owned by licensed vehicle dealers, some of the vehicles had been repossessed by banks and/or credit unions, some of the vehicles had recently been purchased by their owners, and some of the vehicle owners had removed the license plates when they dropped off their vehicles for repair.
On March 29, 2007, Bracy sent a form letter to K & D Automotive notifying the “occupant” that the condition of its property constituted a public nuisance in violation of the City nuisance ordinance. Á check mark was placed next to “junk vehicle(s)” in the list of nuisance conditions, and the “notes” section included a typed note stating: “Junk vehicle — all vehicles must be operable, have current tag, and inflated tires.” Although Bracy had specifically identified six vehicles in his notes that he deemed to be junk vehicles because they did not have license plates, the letter, sent to K & D Automotive did not specifically identify any vehicles that were alleged to be junk vehicles.[2] The letter also apprised the property owner that it had until April 8, 2007, to abate the nuisance or the city council would consider a resolution formally declaring the nuisance to be a public nuisance and authorizing the City to take action to abate the nuisance at a cost to be passed on to the property owner. Moreover, the letter stated that if the nuisance was not abated by April 8, the property owner would be assessed a $150 administrative fee regardless of whether the nuisance was ultimately abated by K & D or the City and its agents.
*756 On April 9, 2007, Bracy returned to K & D Automotive and determined that the nuisance had not been abated. This time, Bracy photographed the six vehicles he had previously noted as being junk vehicles, as well as an additional vehicle, the license plate on which was expired. On April 10, 2007, Bracy sent another letter to K & D Automotive noting that a nuisance' still existed and notifying the property owner that the city council would consider the matter at its meeting on April 17, 2007, at which time a representative of the property could appear and state any objections. Like the earlier letter, this letter provided no information specifying which of the vehicles at K & D Automotive were alleged to be junk vehicles.
In an affidavit, Kendrick asserts that he retained an attorney the day before the scheduled city council meeting, that that attorney subsequently appeared at the meeting and requested more time to become familiar with the situation, and that the city council responded to her request by directing her to speak with Hill, who was also present at the meeting. Ultimately, however, the city council subsequently approved at the meeting resolution no. 103-2007, which formally declared the nuisances identified on an attached list of 55 properties to be public nuisances and ordered the abatement of the same. K & D Automotive was included on the list; its violation was stated as being “junk vehicle(s).” It appears that there was no evidence considered by the city council regarding the particular nuisances alleged to exist on any of the properties, including K & D Automotive, other than the list that was prepared by Hill listing each property and its alleged violation or violations. Certainly, no evidence was considered regarding the condition of any particular vehicles parked at K & D Automotive.
The City subsequently selected Tony’s Automotive from its list of registered nuisance-abatement agents to abate the nuisances at K & D Automotive. On April 20, 2007, a city employee made a “vehicle abatement” list that was subsequently delivered to Tony’s Automotive, which included 12 cars either without a license plate or with an expired license plate to be removed from the premises of K & D Automotive. Only 1 of those 12 vehicles had previously been identified by Bracy before he sent the March 29 or April 10 letters, and 2 of the vehicles on the list had in fact been brought to K & D Automotive after the April 17 city council meeting. On April 22, 2007, Tony’s Automotive towed 10 of the vehicles on the list.[3] On April 23, 2007, the vehicles were released to K & D after it paid Tony’s Automotive a storage fee of $30 per vehicle. Tony’s Automotive subsequently billed the City $600 for the tows, and, on May 9, 2007, the City sent K & D Automotive’s landlord a bill of $750 for the nuisance abatement — $600 for the towing charges and a $150 administrative charge. Under the terms of its lease, K & D was ultimately responsible for, and did pay, that bill.
After the April 2007 tows, Kendrick and K & D retained a new attorney who sent Hill a letter objecting to the City’s application of the City nuisance ordinance with regard to K & D’s automobile-repair business. Nevertheless, on July 27, 2007, Adams sent K & D Automotive another nuisance-abatement letter, substantially identical to the March 29 letter, identifying the accumulation of “litter, junk, [and] trash” and “junk vehicles” at K & D Automotive as a public nuisance. The notes section on this letter stated: “Junk vehicles, auto parts, trash, debris, open storage. All autos on premises must have tags *757 and work orders to remain on property.” K & D Automotive was given until August 6, 2007, to abate the nuisance without having any fees imposed; however, after the condition was not remedied by that time, Adams sent K & D Automotive another letter on August 17, 2007, informing it that the city council would consider the matter at its September 4, 2007, meeting. No vehicles specifically identified as junk were listed in either letter.
Kendrick attended the September 4 city council meeting and spoke with city council president Charles Jinright. Kendrick asserts in an affidavit that he explained to Jinright that he could not produce work orders for the vehicles at K & D Automotive because of a privacy policy printed on the work orders, and, Kendrick further asserts, Jinright responded by telling him that the City would not take any further action until “getting back with [him].” Nevertheless, during the course of the meeting the city council approved resolution no. 233-2007, formally declaring the nuisances identified on an attached list of 95 properties to be public nuisances and ordering their abatement. K & D Automotive was included on the list; its violation was stated as being “litter, junk, trash; junk vehicle(s).” No further specific evidence of the alleged nuisances at K & D Automotive was adduced at the meeting.
Thereafter, a city inspector went to K & D Automotive and compiled a list of 27 vehicles to be towed to abate the nuisances on the property; 24 of those vehicles were included on the list because they either had an expired license plate or no license plate at all.[4] This list was given to Tony’s Automotive, and, in the late evening and early morning hours of September 8 and 9, 2007, Tony’s Automotive removed 28 vehicles from K & D Automotive’s lot. Two of the vehicles towed were not on the abatement list given to Tony’s Automotive by the City and had in fact not been delivered to K & D Automotive until after the September 4 city council meeting. Kendrick further asserts that seven of the vehicles towed were owned by licensed motor-vehicle dealers and two of the vehicles towed had recently been purchased by their owners and that, therefore, those vehicles were not legally required to have license plates. See § 40-12-260(a)(4)(a), Ala.Code 1975 (“The new owner of a motor vehicle shall, within 20 calendar days from the date of vehicle purchase or acquisition, make application to record the registration of the vehicle by the transfer to or the purchase of a license plate for the newly acquired vehicle-”), and § 40 — 12—260(a)(4)(c), Ala.Code 1975 (“Licensed motor vehicle dealers shall not be required to register vehicles in the name of the dealership for vehicles held for resale.”).
On September 10, 2007, K & D paid Tony’s Automotive $1,050 and retrieved the 28 vehicles. Tony’s Automotive billed the City $1,680 for the tows, which bill was approved by Hill and was paid, and the City then billed K & D Automotive’s landlord $1,830 for the nuisance abatement— $1,680 for the towing charges and a $150 administrative charge. K & D has paid all charges assessed.[5]
*758 On April 17, 2009, Kendrick and K & D sued the City defendants and the Tony’s Automotive defendants, asserting claims alleging (1) conspiracy, (2) interference with business activities, and (3) defamation. In the context of those claims, Kendrick and K & D also argued that the City nuisance ordinance “exceed[ed] the City’s police power” and that the City had violated their due-process rights by the manner in which it had enforced the ordinance. The City defendants and the Tony’s Automotive defendants thereafter filed separate answers denying the substance of Kendrick and K & D’s claims, and the discovery process ensued.
On May 28, 2010, the Tony’s Automotive defendants moved the trial court to dismiss the claims against them, arguing that the claims were preempted by federal law. That motion was ultimately denied. On July 7, 2010, Kendrick and K & D added a fourth count to their complaint alleging that the City defendants and the Tony’s Automotive defendants (hereinafter referred to collectively as “the defendants”) were all responsible for damage' inflicted upon vehicles under K & D’s control by Tony’s Automotive while it was towing vehicles from K & D Automotive.
On March 3, 2011, the City defendants moved for a summary judgment on Kendrick and K & D’s claims against them; the Tony’s Automotive defendants filed their own summary-judgment motion the next day. In the City defendants’ motion, the City defendants noted that Kendrick and K & D had challenged the constitutionality of the City nuisance ordinance but failed to serve the attorney general as required by § 6-6-227, Ala.Code 1975.[6] On March 4, 2011, Kendrick and K & D served the attorney general with a copy of the amended complaint, and the attorney general filed an acceptance with the trial court, waiving “any further service upon him of any pleadings, discovery and other matters filed in this cause.” Kendrick and K & D thereafter filed a response to the defendants’ motions for summary judgment as well as their own motion seeking a summary judgment, which was in turn opposed by the defendants.
On April 16, 2012, the trial court granted a request by Kendrick and K & D to amend their complaint again to add eight additional counts, some of which, Kendrick and K & D asserted, had been inarticulately stated in the original complaint. The added counts were as follows:
5. The City’s definition of “junk” unreasonably limits the lawful operation of automobile repair shops and imposes un- ■ necessary and unreasonable restrictions upon the use of private property;
6. The City’s policy of selectively enforcing the nuisance ordinance is unlawful;
7. The City’s nuisance ordinance conflicts with State law that defines a nuisance as “anything that works hurt, inconvenience or damage to another,” § 6-5-120, Ala.Code 1975;
8. The City’s nuisance ordinance is not reasonably designed to abate nuisance inasmuch as it declares conditions to be nuisances without regard to whether the condition causes hurt, inconvenience, or damage to another;
9. The City is wrongfully declaring certain vehicles without license plates to be *759 unlawful public nuisances even though such vehicles can legally be operated on public streets;
10. The City’s procedure for declaring a junk vehicle to be a public nuisance violates property owners’ due-process rights inasmuch as the city council is not required to and in fact does not hear any evidence of an alleged junk vehicle’s condition before declaring it to be a public nuisance;
11. The City violates property owners’ due-process rights inasmuch as the city council delegates to city employees and the chosen abatement agents the decision of which vehicles are junk and may be towed; and
12. The City’s procedure for abating nuisances does not comply with state law inasmuch as the procedure does not require the city to commence a civil action against property owners.
Both the City defendants and the Tony’s Automotive defendants denied the substance of these new counts.
On January 15, 2013, and January 16, 2013, respectively, the City defendants and the Tony’s Automotive defendants again moved the trial court to enter summary judgments in their favor. On April 1, 2013, the trial court entered a partial summary judgment in their favor, concluding:
“Plaintiffs’ complaint and amended complaints contain numerous counts, the basis of which alleges the City of Montgomery towed vehicles from [K & D Automotive] pursuant to city ordinance no. 28-2002. The ordinance authorizes the City of Montgomery to abate nuisances upon proper notice to the property owner and an opportunity to be heard. The allegations made the basis of all but counts III and IV of plaintiffs’ complaint attack the ordinance itself and the definition of ‘junk’ as found in the ordinance as unconstitutional. However the [United States District Court for the Middle District of Alabama] in Ashe v. City of Montgomery, 754 F.Supp.2d 1311 (M.D.Ala.2010), upheld the constitutionality of the ordinance. Therefore, summary judgment is granted to defendants as to all claims regarding the legality of the towing of the vehicles and towing and storage expenses incurred by plaintiffs as a result thereof.
“As to count III of plaintiffs’ complaint alleging improper contact by City officials with plaintiffs’ customers, plaintiffs have produced no evidence to support that claim. Therefore, summary judgment is granted to defendants as to count III.
“As to count IV of plaintiffs’ complaint, there is a genuine issue of material fact as to whether the vehicles in question were physically damaged during the towing process. However, there is no evidence that the individually named defendants were involved in the physical towing of the vehicles. Therefore, summary judgment is granted to defendants Hill, Bracy, Adams, Tony Brooks and Ellen Brooks. Summary judgment is denied as to defendants City of Montgomery and Tony’s Automotive.”
Kendrick and K & D subsequently moved the trial court to vacate its summary judgment, arguing that Ashe v. City of Montgomery, 754 F.Supp.2d 1311 (M.D.Ala.2010), was not determinative of the issues they had raised in this case; however, their motion was denied.
On April 29, 2013, the trial court conducted a bench trial at which it heard testimony and received evidence on Kendrick and K & D’s remaining claim — that Tony’s Automotive had damaged certain vehicles in the process of towing vehicles from K & D Automotive. On July 18, 2013, the trial court entered a judgment *760 holding that the City was not liable for the damage but ordering Tony’s Automotive to pay Kendrick and K & D $520 on their claim. On August 15, 2013, following this final judgment, Kendrick and K & D filed their notice of appeal to this Court.
II.
On appeal, Kendrick and K & D challenge the summary judgment entered by the trial court in favor of the defendants with regard to 6 of the 12 claims they had asserted — counts 5, 7, 8, 9, 10, and 11. We review Kendrick and K & D’s arguments pursuant to the following standard:
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12.”
Dow v. Alabama Democratic Party, 897 So.2d 1035,1038-39 (Ala.2004).
III.
In its order entering a partial summary judgment in favor of the defendants, the trial court stated that the claims relevant to this appeal were effectively all challenges to the constitutionality of the City nuisance ordinance and that the constitutionality of that ordinance had already been established by the United States District Court for the Middle District of Alabama in Ashe. Thus, the trial court reasoned, summary judgment on those claims was appropriate. Because Kendrick and K & D argue that Ashe does not dictate the result in this case, we think it appropriate to begin with a discussion of that case before considering Kendrick and K & D’s specific arguments related to each of their claims.
In Ashe, the plaintiff James Ashe appealed a summary judgment that had been entered in favor of the City and Tony’s Automotive on takings and due-process claims Ashe had asserted after the City and Tony’s Automotive had removed items, including approximately 10 vehicles, from his property after the city council declared the vehicles on his property to be public nuisances under the City nuisance ordinance.[7] 754 F.Supp.2d at 1312-13. Kendrick and K & D have not asserted a takings claim, so the federal court’s analysis of Ashe’s takings claim is not relevant here, but, with regard to Ashe’s due-process claims, the federal district court stated:
“Ashe asserts violations of both his substantive and procedural due-process rights under the Fourteenth Amend-
*761 merit. The Fourteenth Amendment ensures that, ‘No State shall ... deprive any person of life, liberty or property, without due process of law.’ U.S. Const. Amend. XIV. The substantive component of the Due Process Clause recognizes those ‘rights that a state may not remove, regardless of the process, as well as actions that can not be countenanced, regardless of the appropriateness of the process.’ McKinney v. Pate, 20 F.3d 1550, 1560 n. 15 (11th Cir.1994) (en banc). However, ‘conduct by a government actor will rise to the level of a substantive due-process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense.’ Waddell v. Hendry Cty. Sheriff’s Office, 329. F.3d 1300, 1305 (11th Cir.2003) (citing Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125, 112 S.Ct. 1061,117 L.Ed.2d 261 (1992) (‘As a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.’)). Applying this strict standard, the court finds that Ashe has failed to set forth a valid claim for a substantive due-process violation. He presents no evidence that the city engaged in ‘conscience shocking’ behavior or that the city acted arbitrarily. Nor could he. As noted in the discussion on unconstitutional takings, the city clearly acted within the scope of its legitimate police power throughout the abatement process. This action taken in the service of the general welfare did not constitute a substantive due-process violation. See Game [v. City of Ft. Walton Beach, Fla.], 366 F.3d [1186,] 1191 [ (11th Cir.2004) ] (government policy is arbitrary only if it lacks a ‘substantial relation to the public health, safety, morals, or general welfare’) (quoting Euclid v. Ambler Realty Co., 272 U.S. 365, 395, 47 S.Ct. 114, 71 L.Ed. 303 (1926)). As Ashe has failed to set forth evidence of arbitrary or conscious-shocking action in this case, there is no basis for finding a violation of substantive due process.”
754 F.Supp.2d at 1315-16. The federal district court rejected Ashe’s procedural due-process claim as well, noting that the City had provided Ashe with proper notice and an opportunity to be heard before removing the vehicles from his property. See 754 F.Supp.2d at 1319 (“[I]n this case, the evidence demonstrates that the city provided adequate procedural safeguards to ensure that residents do not suffer harm to their property without due notice and an opportunity to be heard.”). The federal district court further specifically rejected Ashe’s argument that the notice provided by the City was constitutionally inadequate based on the fact that the notices Ashe received did not identify the specific vehicles that were subject to abatement, stating: “Ashe’s argument is unavailing. The April 24 notice [sent to him], which clearly advised that he remove the ‘junk vehicle(s)’ or any ‘motor vehicles’ parked in his yard and undergoing repair, adequately warned him that he was responsible for moving any vehicles fitting this specific description.” 754 F.Supp.2d at 1320.
Thus, it is true that the federal district court in Ashe upheld the City nuisance ordinance in a constitutional challenge to its procedures providing for notice and adjudication of public-nuisance complaints, holding that those procedures complied with the procedural component of the Fourteenth Amendment’s Due Process Clause. See Ashe, 754 F.Supp.2d at 1320-21 (“[T]he question is whether the city’s procedures pass constitutional muster. Overall, as stated, the procedures providing for notice and adjudication of public *762 nuisance complaints indicate that Ashe had adequate notice; furthermore, going so far as to evaluate the city’s actual actions, the court must conclude that Ashe’s right to due process was fully respected throughout the abatement process.”). However, nowhere in Ashe did the federal district court make a blanket declaration that the City nuisance ordinance was insulated from any further constitutional challenge based on the specific facts of a later case. The facts in this case differ from those in Ashe in some significant ways, and Kendrick and K & D have asserted arguments based on those facts that were not considered in Ashe. Thus, although Ashe does bear on some of those arguments, we must nevertheless consider them because Ashe does not, alone, resolve this case.
IV.
For convenience, we will consider Kendrick and K & D’s arguments in the order they relate to the counts in their amended complaint. We first consider Kendrick and K & D’s challenge to the definition of “junk” in the City nuisance ordinance, which relates to counts 5, 7, and 8 in their amended complaint. In support of their argument that the City’s definition of “junk” is too unreasonable and over-broad to pass constitutional muster, Kendrick and K & D rely on Ross Neely Express, Inc. v. Alabama Department of Environmental Management, 437 So.2d 82, 84-85 (Ala.1983), in which this Court stated:
“The right to due process is guaranteed to the citizens of Alabama under the Alabama Constitution of 1901, Article I, Sections 6 and 13. This constitutional right to due process applies in civil actions as well as criminal proceedings. Pike v. Southern Bell Telephone and Telegraph Co., 263 Ala. 59, 81 So.2d 254 (1955). The courts have found that* this right is violated when a statute or regulation is unduly vague, unreasonable, or overbroad....
“In reviewing a regulation of a county Board of Health, this court held that the central issue was reasonableness. Baldwin County Board of Health v. Baldwin County Electric Membership Corporation, 355 So.2d 708 (Ala.1978). In City of Russellville v. Vulcan Materials Co., 382 So.2d 525 (Ala.1980), this court said:
“ ‘The validity of a police power regulation ... primarily depends on whether, under all the existing circumstances, the regulation is reasonable, and whether it is really designed to accomplish a purpose properly falling within the scope of the police power. Crabtree v. City of Birmingham, 292 Ala. 684, 299 So.2d 282 (1974).... Otherwise expressed, the police power may not be employed to prevent evils of a remote or highly problematical character. Nor may its exercise be justified when the restraint imposed upon the exercis.e of a private right is disproportionate to the amount of evil that will be corrected. Bolin v. State, 266 Ala. 256, 96 So.2d 582, conformed to in 39 Ala.App. 161, 96 So.2d 592 (1957).’
“Statutes and regulations are void for overbreadth if their object is achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms. See Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Keyishian v. Board, of Regents, 385 U.S. 589, 87 S.Ct. 675,17 L.Ed.2d 629 (1967).”
Kendrick and K & D essentially argue that the City’s definition of “junk,” inasmuch as it includes vehicles such as those towed from K & D Automotive, is arbitrary, unreasonable, and overbroad because, they *763 say, it bears no relation to the stated purpose of the City nuisance ordinance. As they explain in their brief:
“The City[ ] nuisance ordinance defines ‘junk’ to include items in an ‘inoperative condition’ and defines ‘inoperative’ motor vehicle to include every vehicle with a mechanical problem making it inoperable or unsafe to operate and every vehicle lacking.any legal requirement for operation. In addition, City employees interpret the legal requirement for operation to mean that every vehicle must have a tag, even if under state law the vehicle can be legally operated without a tag.
“K & D’s shop, and vehicle repair shops generally, are designed to repair vehicles that are inoperable and cannot be safely operated; In addition, K & D is fortunate enough to have among its customers used car dealerships, financial institutions, credit unions, and others who bring recently acquired and/or repossessed vehicles without tags to K & D’s shop for repairs. Therefore, a substantial percentage of the vehicles brought to K & D’s shop for repair fall within the City’s definition of ‘junk.’- If K & D were to limit the vehicles it accepts for service to those not within the City’s definition of ‘junk,’ K & D could not likely stay in business as a repair shop.
“The justification that the City urged in the trial court for having an ordinance that defines ‘junk’ so broadly is its power to promote the general welfare, which it argued included the concept of promoting ‘an environment free from unsightliness and other visual intrusion[s].’ In addition to unsightliness, the nuisance ordinance itself declares as one of its purposes, potentially applicable to nuisance vehicles, to eliminate ‘breeding • grounds and shelter for rats, mice, snakes, mosquitos and other vermin, insects, and pests.’ However, the definition of ‘junk’ that the City has chosen does little to eliminate the evils of unsightliness and breeding grounds for ■ pests. That is because the legal and mechanical abilities of á vehicle to operate do not necessarily affect its looks or establish anything about the way it is being maintained. Neat, attractive, well-maintained vehicles can have mechanical issues that make them inoperable or unsafe to drive. That a vehicle lacks a legal requirement for operation does not mean it is unsightly or a breeding ground for pests.
“All but three of the vehicles towed from K & D’s shop were towed because they lacked current tags, not because they were unsightly or a pest breeding ground. None of the cars towed would have met any reasonable person’s definition of junk. Defendant Hill even described the cars towed on April 22, 2007, as ‘all looking] to be in perfect condition.’
“Thus, the City’s definition of ‘junk’ does little or nothing to achieve the City’s stated goals, while significantly impairing plaintiffs’ ability to use their property to operate a vehicle repair shop. Plaintiffs submit, that makes the City’s nuisance ordinance unreasonable and overbroad.”
(Citations to record omitted.)
In this same vein, Kendrick and K & D also argue that the City nuisance ordinance should be voided because state law defines a “nuisance” as “anything that works hurt, inconvenience or damage to another,” and, Kendrick and K & D argue, the City nuisance - ordinance declares certain vehicles to be public nuisances without any regard to whether those vehicles cause “hurt, inconvenience, or damage to another” and even if, in the words of Hill (the *764 City’s chief inspector at the time), those vehicles appear to be “in perfect condition.” § 6-5-120, Ala.Code 1975. See also § 11-45-1, Ala.Code 1975 (“Municipal corporations may from time to time adopt ordinances and resolutions not inconsistent with the laws of the state to carry into effect or discharge the powers and duties conferred by the applicable provisions of this title and any other applicable provisions of law and to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of the inhabitants of the municipality, and may enforce obedience to such ordinances.” (emphasis added)).[8]
The defendants’[9] response to these arguments is to argue that all cities are given “the power to prevent injury or annoyances from anything dangerous or offensive or unwholesome and to cause all nuisances to be abated....” § 11-47-117, Ala.Code 1975. Accordingly, they argue, the City can define what constitutes a nuisance and the procedure for abating that nuisance in whatever manner it elects to do so.[10] Clearly, this argument is without merit. As evidenced by both Ashe and Ross Neely Express, a municipality cannot enact any ordinance it desires without regard to applicable federal and state constitutional limitations. Those constitutional limitations were further explained by this Court in City of Russellville v. Vulcan Mateñals Co., 382 So.2d 525 (Ala.1980), a similar case in which a business claimed that an unreasonable and arbitrary municipal nuisance ordinance, if upheld, would effectively drive it out of business. We stated then:
“While the courts are reluctant to interfere with the wide discretion vested in the municipal authorities in enacting ordinances for the public welfare, the duty rests upon the courts to determine their reasonableness, and if an ordinance is found to be unreasonable and but arbitrary fiat, a court will not hesitate to perform that duty and strike it down. Gilchrist Drug Co. v. City of Birmingham, 234 Ala. 204, 174 So. 609, 111 A.L.R. 103 (1937). Municipal authorities are given the power in this state to prevent and to abate nuisances, but they cannot, in the exercise of this power, declare a perfectly lawful business or trade to be a nuisance and abate it when the business, trade, or thing is not in law or in fact a nuisance, or is not carried on or operated in such manner as to be likely to become a nuisance. Spear v. Ward, 199 Ala. 105, 74 So. 27 (1917); Reynolds v. Vulcan Materials Compa *765 ny, 279 Ala. 363, 185 So.2d 386 (1966). A court of equity may enjoin the enforcement of an unreasonable or invalid ordinance when the enforcement of the same would interfere with the conduct of business or other property rights. City of Birmingham v. Leo A. Seltzer, Inc., 229 Ala. 675,159 So. 203 (1935).
“... Cities may not, under the guise of the police power, impose restrictions that are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities. Leary v. Adams, 226 Ala. 472, 147 So. 391 (1933).”
In light of these authorities, the arguments of the parties, and the facts in the record, we agree with Kendrick and K & D that the defendants failed to establish that they were entitled to a summary judgment on counts 5, 7, and 8 asserted by Kendrick and K & D.
V.
Count 9 in Kendrick and K & D’s amended complaint alleges that City employees are wrongfully interpreting the City nuisance ordinance in a manner that holds all vehicles without current license plates to be nuisances subject to abatement even though this interpretation is contrary to the plain language of the ordinance, which declares a vehicle to be “junk” only if it is “inoperative” and specifically defines an “inoperative” vehicle as one that “cannot be safely operated or [that] is incapable of being moved under its own power or [that] may not be legally operated due to lack of any legal requirement including an ■ expired license plate.”[11] (Emphasis added.) Kendrick and K & D argue that several of the vehicles towed from the premises of K & D Automotive because they did not have current license plates nevertheless complied with all legal requirements for operation either because their owners had recently purchased them or because they were owned by licensed motor-vehicle owners. See § 40-12-260(a)(4)(a) and (c), Ala.Code 1975.
The defendants have made no substantive attempt to rebut Kendrick and K & D’s argument; instead, they merely reassert their argument that the towings were proper by stating that Kendrick and K & D should have acquired current license plates for the vehicles after receiving notice of the nuisance violations. Setting aside the issue whether Kendrick or K & D — who did not own the vehicles in question — could even have acquired current license plates for the vehicles, the defendants’ response ignores the fact that the language of the City nuisance ordinance declares a vehicle to be “inoperative,” and by extension “junk” and a potential nuisance, only if the lack of a current license plate renders the vehicle unlawful to drive. Kendrick and K & D have presented evidence indicating that at least some of the vehicles towed from K & D Automotive by Tony’s Automotive could legally be operated in spite of the lack of a current license plate. In light of that fact, the summary *766 judgment entered on Kendrick and K & D’s ninth count was improper.
We further note that the rationale applied by the Ashe court when rejecting a similar argument does not apply in this case. That court stated:
“Finally, Ashe asserts that, regardless of the process used, the abatement of his vehicles was unwarranted, as they ‘were operable, with [] current tag[s] and tires, inflated, not parked in the front yard, and within the exception for sale.’ The records show, and it has been stated repeatedly in this opinion, that Ashe had a fair opportunity to contest the declaration of his property as a nuisance before the proper channels of government. He did not do so and cannot now seek redress — and a second bite of the apple — before this court. This challenge is also outside of this court’s purview because it is an argument based on how the given procedures were followed and not whether those procedures were constitutionally adequate. Should Ashe believe that the city incorrectly removed operable vehicles that were illegally parked, then he should seek redress in state court. This court, in considering federal claims, does not sit as a general board of review of the actions of the City of Montgomery.”
754 F.Supp.2d at 1321. Unlike Ashe, Kendrick went to both city council meetings at which public nuisances were declared to exist at K & D Automotive, and he contested the City’s continued application of the Gity nuisance ordinance at a subsequent meeting as well; accordingly, we cannot say that he is seeking a second bite of the apple. Moreover, unlike the federal district court in Ashe, we are a state court and, as the Ashe court noted, this is the appropriate venue for such an argument. Id. (“Should Ashe believe that the city incorrectly removed operable vehicles that were illegally parked, then he should seek redress in state court.”).
VI.
Kendrick and K & D next argue that the trial court erred by entering a summary judgment on count 10 asserted in their amended complaint, which alleges that the defendants -violated their due-process rights inasmuch as the city council declared public nuisances to exist on the K & D Automotive premises even though, Kendrick and K & D argue, the city council heard no evidence of any specific nuisances. The defendants, however, argue that the resolution authorizing nuisance abatement submitted by the housing-code department, accompanied by a list of the properties containing alleged nuisances and a short description of the alleged nuisances, is itself sufficient evidence and that no additional evidence is required. The defendants further assert that a representative from the housing-code department attends each city council meeting and that that representative is ready to offer additional evidence of the alleged nuisances if a property owner appears and contests the issue. In this case, however,- the defendants assert that no additional evidence was offered because, even though Kendrick attended the relevant city council meetings, in both cases he attempted to resolve the issue without formally submitting to the entire city council evidence challenging the asserted nuisance violations.
We agree with the defendants’ argument. At the two city council meetings involving vehicles on the premises of K & D Automotive, the city council was presented with lists of 55 and 95 properties, respectively, that were alleged to be hosting nuisances. Those lists contained the property owners’ names and mailing addresses, as well as legal and general descriptions of the property and a short de *767 scription of the alleged nuisance violation or violations. The evidence in the record also indicates that the lists were prepared by employees of the housing-code department, such as Hill, who were also involved in the other facets of the nuisance-investigation and abatement process. We conclude that those lists were themselves evidence sufficient to shift the burden of proof to the property owners and that due process does not require the presentation of additional evidence before the city council can take action. The trial court accordingly did not err by entering a summary judgment in favor of the defendants on Kendrick and K & D’s 10th count.
VII.
Kendrick and K & D’s final argument is that summary judgment was not warranted on count 11, which alleged that the defendants have violated their due-process rights inasmuch as the City’s procedures for declaring and abating nuisances authorized Tony’s Automotive to tow vehicles from K & D Automotive’s premises that were not even at those premises until after the city council had adopted the resolutions authorizing abatement. Specifically, with regard to the April 2007 tows, Kendrick and K & D have submitted evidence indicating that Bracy initially cited K & D Automotive for nuisance based on the presence of six or seven vehicles that were alleged to be in violation of the City nuisance ordinance. However, after the city council adopted a resolution declaring “the nuisances on the properties described in [the attached list] to be public nuisances and the same ordered to be immediately abated,” a city employee — presumably Bracy — returned to K & D Automotive and prepared a list of 12 vehicles to be towed, only 1 of which had been identified before the city council meeting and 2 of which had not been delivered to K & D Automotive until after the city council meeting. Tony’s Automotive subsequently towed 10 of those 12 vehicles.
With regard to the September 2007 tows, there is no evidence regarding which vehicles led to the initiation of the nuisance-abatement process; however, after the city council adopted a resolution similar to the one adopted in April, a city employee went to K & D Automotive and prepared a list of 27 vehicles to be towed. That list was then give to Tony’s Automotive, which subsequently towed 26 of those 27 vehicles along with 2 additional vehicles that its tow-truck driver apparently deemed to be junk vehicles. It is undisputed that neither of those two vehicles had been at K & D Automotive when the city council adopted the resolution authorizing abatement.
The defendants do not dispute the essence of Kendrick and K & D’s claim— that city employees and/or the selected abatement agents are allowed to decide what vehicles to tow from a property once a public nuisance has been declared to exist on the property without regard to whether the selected vehicle was on the property at the time that declaration was made. Rather, they cite Ashe in support of this policy inasmuch as the Ashe court held that the notice Ashe received advising him to remove junk vehicles from his property “adequately warned him that he was responsible for moving any vehicles fitting this specific description.” 754 F.Supp.2d at 1320. Thus, they argue, Kendrick and K & D had notice that any vehicles falling within the definition of “junk” in the City nuisance ordinance were subject to abatement at any time after the city council adopted the resolutions declaring the nuisances at K & D Automotive to be public *768 nuisances.[12]
However, Kendrick and K & D argue that Ashe may be distinguished inasmuch as Ashe argued only that he was never told what specific vehicles on his property were nuisances; he did not, Kendrick and K & D argue, claim that vehicles that were subsequently towed from his property were not on his property when the city council passed the relevant resolution. This distinguishing factor is important, Kendrick and K & D argue, because “the resolutions could not declare any conditions other than those that existed when the resolutions were passed to be nuisances _[I]t is not possible to give notice of and hold an evidentiary hearing to weigh evidence of whether a condition that does not exist constitutes a nuisance.” (Kendrick and K & D’s brief, p. 37.) We agree. The resolutions adopted by the city council declared “the nuisances on the properties described in [the attached list] to be public nuisances.” Notably, the properties themselves are not declared public nuisances; rather, it is the identified nuisances then existing on the property that are declared public nuisances. Kendrick and K & D have identified certain vehicles that were towed from K & D Automotive without having been declared public nuisances by the city council, and it cannot be said that they were given notice and an opportunity to be heard regarding the status of those vehicles.[13] The summary judgment entered on this count is accordingly due to be reversed.
VIII.
Kendrick and K & D sued the City defendants and the Tony’s Automotive defendants asserting various due-process claims after, on two occasions, the City declared vehicles parked at K & D Automotive to be public nuisances under the City nuisance ordinance and authorized Tony’s Automotive to abate the nuisances by removing the vehicles from the premises. The trial court thereafter entered a summary judgment in favor of the City defendants and the Tony’s Automotive defendants on those claims; however, Kendrick and K & D have established on appeal that a judgment as a matter of -law was not warranted on counts 5, 7, 8, 9, and 11 of their amended complaint. The summary judgment as to those counts is accordingly reversed. Kendrick and K & D have not established, however, that the trial court erred by entering a summary judgment in favor of the defendants on count 10, and that judgment is accordingly affirmed. The cause is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PARKER, SHAW, and WISE, JJ., concur.
MOORE, C.J., concurs in the result.

. In 2009, the City nuisance ordinance was replaced by ordinance no. 34-2009, which likewise prohibits the accumulation of "junk” and defines "junk” in a similar manner.

. Hill, the City's chief inspector at the time, subsequently confirmed in a deposition that, to his knowledge, abatement notices mailed out because of the presence of junk vehicles did not specifically identify the vehicles alleged to be junk. See also Ashe v. City of Montgomery, 754 F.Supp.2d 1311, 1319 (M.D.Ala.2010) (in which the appellant also complained that notices mailed to him asserting that he was in violation of the City nuisance ordinance did not identify the vehicles alleged to be junk vehicles).

. The other two vehicles were apparently not on the premises on April 22.

. There is no indication in the record that any action was taken by the City to address the alleged presence of litter, trash, or other junk on the premises.

. It appears from a transcript in the record that Kendrick appeared at a November 6, 2007, city council meeting to again challenge the City’s practice of towing cars claimed to be nuisances from K & D Automotive; however, it is not clear if that appearance was made solely in response to the previous towings or because of the threat of additional towings. In any event, there is no evidence in the record indicating that there have been any additional towings since September 2007.

. Section 6-6-227 provides:
“In any proceeding which involves the validity of a municipal ordinance, or franchise, such municipality shall be made a party and shall be entitled to be heard; and if the statute, ordinance, or franchise is alleged to be unconstitutional, the Attorney General of the state shall also be served with a copy of the proceeding and be entitled to be heard."

. In fact, the evidence in the record in the instant case indicates that the city council considered the nuisances on Ashe’s property at the same September 4 city council meeting at which it considered the nuisances on the premises of K & D Automotive. Ashe, 754 F.Supp.2d at 1314.

. Kendrick and K & D identify § 11-67A-2, Ala.Code 1975, as an example of how a properly tailored nuisance ordinance might define the term “inoperable motor vehicle.”

. In their brief, the Tony’s Automotive defendants have adopted all the arguments made by the City defendants in their brief.

. The defendants also argue that Kendrick and K & D’s challenge to the validity of the City nuisance ordinance is barred by § 6-6-227, Ala.Code 1975, because, they argue, Kendrick and K & D served the attorney general with only their first amended complaint containing their fourth count alleging that Tony's Automotive damaged certain vehicles in the process of towing them, and not their original complaint or their second amended complaint, which contained the counts challenging the City nuisance ordinance. We disagree. First, the totality of the evidence indicates that the attorney general was served with the original complaint when he was served with the first amended complaint. Second, the waiver filed by the attorney general after receiving at least one of the complaints indicated that he waived "any further service upon him of any pleadings, discovery and other matters filed in this cause.” Kendrick and K & D's second amended complaint is encompassed by this waiver; they accordingly were under no obligation to deliver a copy to the attorney general.

. Citing Ex parte Cranman, 792 So.2d 392 (Ala.2000), the individual defendants have argued that the summary judgment in their favor should be upheld on the basis of State-agent immunity regardless of whatever merit Kendrick and K & D’s arguments might have. However, as evidenced by this argument, Kendrick and K & D have argued that the individual defendants were acting under a mistaken interpretation of the law, which renders State-agent immunity inapplicable. Ex parte Cranman, 792 So.2d at 405. Based on the evidence in the record and the claims of Kendrick and K & D, we decline at this time to affirm the summary judgment in favor of the individual defendants on the basis of State-agent immunity.

. As already noted, Kendrick and K & D also dispute that the towed vehicles fell within the definition of "junk.”

. We note that "junk" vehicles differ from litter or generically identified junk in that vehicles are more likely to have at least some value and are readily identifiable through different means, whether it be a general description such as color, make, and model, or by reference to the vehicle identification number or, if available, the license-plate number. Thus, a claim that the City had violated due-process rights by cleaning up common litter such as cigarette butts, scrap paper, or discarded food packaging that was not on a property when a public nuisance was declared would be a different case.